## WOODWARD *v.* RAGLAND.

PUNITIVE DAMAGES ; EVIDENCE ; INTENT ; PRINCIPAL AND AGENT ; RATIFICATION BY PRINCIPAL OF AGENT'S TORTS ; PETIT LARCENY.

1. In addition to compensatory damages, the jury may in actions of tort award punitive damages, if the defendant has acted wantonly or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations ; but such guilty intention must be shown, in order to charge the defendant with exemplary damages.

2. Punitive damages cannot be assessed against a principal, unless he participated in the wrongful act, or expressly or impliedly authorized or ratified it.

3. In an action of tort by a husband and wife against the proprietors of an extensive retail dry goods establishment and two of their employees, the superintendent of the store and the detective, for the malicious arrest by the detective of the female plaintiff upon a charge of theft, and the search of her person, it is competent, as bearing upon the question of punitive damages, and the mitigation thereof, for the superintendent to testify as to information given him by a clerk, who, at his request made an examination after the arrest, for the purpose of ascertaining whether or not the article said to have been stolen was actually missing.

4. The defendants in such a case have the right to offer evidence to defeat the plaintiff's claim altogether, and also in mitigation of damages of a punitive nature.

5. In such a case, the proprietors of the store, in order to repel a charge that they had authorized their employee to make the arrest, are entitled to show that from their own knowledge such employee had not prior to the arrest of the female plaintiff accused any one of theft unless he had seen the theft committed.

6. The proprietors of the store, in such a case, for the purpose of rebutting any presumption from the plaintiff's evidence that they authorized or approved the treatment of the female plaintiff by their employee, the detective, have the right to prove that they had no knowledge of the arrest until after its occurrence ; that the detective had never been authorized by them to so treat a customer ; that so far as they knew he had never done so during his employment; and that they had made diligent inquiries as to his character before his employment; and for the purpose of showing that the employment of a detective was proper under the circumstances, they were entitled to prove the necessity for it as demonstrated by common experience of mercantile houses of the same class as their establishment.

7. In such a case, while evidence that the principals have retained the agent in their employ and have defended him in litigation resulting from his act is admissible to show ratification, it should always be accompanied with a statement by the court of its nature, purpose and weight.

8. Whether petit larceny is in this District a felony, *quære.*

No. 262. Submitted April 12, 1894. Decided January 22, 1895.

HEARING on an appeal by the defendants from a judgment on verdict in an action for malicious arrest. *Reversed.*

The COURT in its opinion stated the case as follows :

On the 17th day of April, 1891, the appellees, Fannie C. Ragland and Henry Lee Ragland, her husband, as plaintiffs, filed their declaration in the Supreme Court of the District of Columbia, against the appellants, S. Walter Woodward, Alvin M. Lothrop, George F. Hendrick, and Charles E. Flinder, as defendants, in which the plaintiffs aver that the defendants, S. Walter Woodward and Alvin M. Lothrop, were partners doing business in the city of Washington as Wood-ward & Lothrop, and on the 20th day of January, 1891, were the owners of a store for the sale of dry goods and other merchandise, and invited the public into their premises for the purchase of such goods, and the female plaintiff, then unmarried and of the maiden name of Fannie C. O'Hare, by invitation of said Woodward & Lothrop, had entered said store together with her sister, Laura O'Hare, and had made some purchase of merchandise therein, and while she was waiting for the package so purchased to be delivered to her, the defendant Charles E. Flinder, a detective in the employ-ment of Woodward & Lothrop, and acting under their order and direction, assaulted the plaintiff Fannie C. Ragland, and intending to hurt, injure, and aggrieve her, then and there falsely, maliciously, and without cause, publicly charged her with having stolen a diamond ring and a diamond-shaped napkin ring and other articles of value from Woodward & Lothrop, and thereupon in the presence of employees of said store and of numerous visitors and customers there congre-gated the said Flinder and the said Hendrick with him, also in the employment of Woodward & Lothrop, and both acting under the order and direction and by the authority of said firm, laid violent hands upon the said Fannie, and brutally assaulted her and forced her into a private room and brutally and against her will searched her person and caused her further to be searched by a colored woman in their presence, took her pocket book from her pocket, forcibly detained her

in said room for two hours, used violent, abusive, and insulting language to her, and refused to permit her to communicate with any of her friends or relatives, whereby she suffered bodily injury and was greatly wounded and injured in her feelings and reputation, to her great damage; and further that the said Fannie was at the time of said injury about to be married to the plaintiff Henry Lee Ragland, and was on the 2d day of February, A. D. 1891, married to him; and plaintiff claims damages in the sum of $20,000, and costs.

To this declaration the defendants jointly and severally pleaded not guilty, on which the plaintiffs duly joined issue. The jury returned a verdict against all the defendants for damages in the sum of $15,000. The court overruled a motion for a new trial, but required the plaintiffs to enter a *remittitur* for $5,000, and the court thereupon gave judgment for the plaintiffs for $10,000, from which the defendants appealed to this court.

*Mr. Henry E. Davis* and *Mr. A. S. Worthington* for the appellants:

1. The appellants Woodward & Lothrop cannot be held liable in this action, which is an action of trespass and not of case. The charge in the declaration is that what Flinder and Hendrick did was by order, direction and authority of Woodward & Lothrop; there is no charge of ratification. No order, direction or authority from them is shown by the evidence. The terms of Flinder's employment did not include a right to arrest on suspicion of guilt. And no such order, direction or authority can be presumed. *Mali* v. *Lord*, 39 N. Y. 381; *Imp. Co.* v. *Steinmeier*, 72 Md. 313; *Edwards* v. *Rwy. Co.*, 5 C. P. 445: *Poulton* v. *Rwy. Co.*, L. R. 2 Q. B. 534; *Allen* v. *Railroad Co.*, L. R. 6 Q. B. 65; *Mallach* v. *Ridley*, 43 Hun, 336; *Carter* v. *Machine Co.*, 51 Md. 290; *Bank* v. *Owston*, 4 L. R. App. Cas. 270; *Call* v. *Palmer*, 116 U. S. 102.

Assuming that evidence of ratification is admissible in

the case, there is no ratification shown and no evidence of it which should have been considered by the jury. Ratification of a tort assumes a wrong, knowledge thereof, and approval. Whether assent to a trespass after its commission will make the party assenting a trespasser *ab initio, dubitatur.* But, if so, such assent must be clear and explicit and founded on full knowledge of the trespass. *Adams* v. *Freeman,* 9 Johns. 117; *Bannon* v. *Warfield,* 42 Md. 42; *Bell* v. *Cunningham,* 3 Pet. 69; *Owings* v. *Hull,* 9 Pet. 627; *Bennecke* v. *Ins. Co.,* 105 U. S. 360; *Tucker* v. *Jerris,* 75 Me. 184; *Smith* v. *Shaw,* 12 Johns. 265, 266; *Elder* v. *Bemis,* 2 Metc. 605, 606; *Railway* v. *Moore,* 69 Tex. 157.

It cannot be held as matter of law that the mere retention of a servant who, in the course of his employment and while improperly performing an act arising in the line of his duty, inflicts a malicious wrong on another, operates as a ratification of his malicious act and thus to fix his evil motive on his employer so as to render the latter liable in damages. In an action for injuries sustained by the negligence of defendant's servant, the fact that he was not discharged, but was retained in defendant's employ, does not tend to prove a ratification so as to authorize the jury to give punitive damages. *Edelmann* v. *Transfer Co.,* 3 Mo. App. 503. Even though the servant be retained after criminal conviction. *Williams* v. *P. P. C. Co.,* 40 La. Ann. 417; 33 Am. & Eng. RR. Cas. 407. Or, although the act complained of was the subject of correspondence between the attorney of the injured party and the defendant, in which the latter's secretary offered to reimburse the injured party certain costs incurred by him. *Roe* v. *Railway Co.,* 7 Exch. 36. Or even though the defendant's attorney appeared before a magistrate to prosecute the charge upon which the defendant's servant had arrested the plaintiff. *Railway Co.* v. *Broom,* 6 Exch. 314.

2. Exemplary damages cannot be allowed in a case of this kind unless the party charged committed the act complained

of maliciously, or, what is the same thing, with a reckless and wanton disregard of the rights of the party complaining. When exemplary damages are claimed the scope of the inquiry at the trial is greatly enlarged, and many facts and circumstances become admissible on both sides which would be irrelevant if compensatory damages only were claimed. *Beckwith* v. *Bean*, 98 U. S. 266; 7 Am. & Eng. Enc., 692, note 4 (citing many cases); 28 Am. St. Rep. 875, note; 1 Sedgwick on Damages, Sec. 383.

By the third instruction the jury were told that if they found that Flinder had acted recklessly, or wantonly, or maliciously in this matter, all the defendants were liable in exemplary damages in either one of three contingencies: 1st, if Flinder so acted in the line of his duty to, and in the course of his employment by, the defendants Woodward & Lothrop, pursuant to power and authority vested in him by them; 2d, if they by their conduct authorized Flinder's acts before they were committed, and those acts were done with the direction, assistance, or approval of Hendrick; and, 3d, if they by their conduct approved Flinder's acts after they were committed, and those acts were done by the direction, assistance, or approval of Hendrick. The rules of law in force in this jurisdiction regarding the liability in exemplary damages of the principal for the malicious acts of his agents are fully considered in a very recent decision of the Supreme Court of the United States. *Lake Shore R.R. Co.* v. *Prentice*, 147 U. S. 101. It is laid down in that case that to subject the principal to punitive damages the guilty intent of the agent must be brought home to him, and that this may be done by showing that the principal authorized or ratified the act under such circumstances as to show that he participated in the malice of his agent. See also *The Amiable Nancy*, 3 Wheat. 558; 28th Am. Rep. 876, note reviewing the authorities. Applying this rule to the instruction referred to, it is seen at once that it is full of error.

Even in an action *ex contractu*, the principal is not bound by the ratification of an unauthorized act of his agent unless he has full knowledge of all the facts in the case. *Bell* v. *Cunningham*, 3 Pet. 69; *Owing* v. *Hull*, 9 Pet. 607; *Bennehe* v. *Ins. Co.* 105 U. S. 355. Much less will he be bound where he is sued in an action *ex delicto*, and still less where in that action it is sought to charge him with exemplary damages.

This is a suit against all four of these defendants, and punitive damages could not be assessed against any of them unless it was assessed against all—there could be no splitting of the verdict. The court was not asked to instruct the jury to render a verdict against one for any other or different sum than against the other defendants. Therefore, if the instruction was erroneous as to the liability of any of the defendants, it was erroneous as to all. An injured person may not sue the agent who has wronged him, and the principal whom that agent represents, and recover punitive damages, unless he shows malice, or its equivalent, as to both. *Becker* v. *Dupree*, 75 Ill. 167.

*Mr. G. E. Hamilton* and *Mr. M. J. Colbert* for the appellees:

1. A principal is liable for the acts and negligence of his agent or servant in the course of his employment, although he did not authorize or know of the acts complained of. *Railroad Co.* v. *Hanning*, 15 Wall. 649. Though the servant was employed for one thing, yet if permitted to do another, or if the fact that he did another was or should have been known to the master, the latter is liable in the same degree as if it came within the servant's original employment.

To say that a master, having employed a servant to detect and prevent thefts and recover stolen goods, using in the performance of those duties his own discretion as to procedure, is not liable for the acts of the servant in the line of his employment, is so contrary to the rule of law as not to be worthy of serious consideration. *Mali* v. *Lord*, 39 N.

Y. 381, relied upon by appellants in support of their contention in this case, is clearly distinguishable, and besides the rule there announced has been discredited in later decisions of the same court. See *Rounds* v. *Railroad Co.,* 64 N. Y. 129; *Hoffman* v. *Railroad Co.,* 87 N. Y. 25; see also Cooley on Torts, 630.

2. The retention of a servant in the employ of the master after knowledge of the commission by him of a tortious act is brought home to the master, will be construed as a ratification of the tort even to the extent of subjecting the master to exemplary damages. *Goodard* v. *Railroad Co.,* 57 Me. 202; *Perkins* v. *Railroad Co.,* 55 Mo. 202.

Any act done by Woodward & Lothrop to protect Flinder from the consequence of the arrest, he being still in their employ, would tend to show ratification. The fact that at the trial they united their defense with his, their attorneys conducting his defense as well, was a circumstance properly submitted to the jury.

3. The evidence tends to show that Flinder was put in a position without restriction by Woodward & Lothrop and Hendrick to do the acts complained of; that his acts and his system of action were known to his employers; that the arrest complained of was participated in by Hendrick, and after its occurrence was made known to Woodward & Lothrop, who, so far from repudiating it and making amends to the party aggrieved, or punishing the perpetrators, promoted. Hendrick and retained Flinder in their employment, besides defending him in the Police Court and making common defense with him in the trial of this case. The case therefore comes fully within the rule laid down in *Railroad Co.* v. *Prentice,* 147 U. S. 114, and which is supported by the current decisions of the courts of this country, a few of which are the following: *Samuels* v. *Railroad Co.,* 14 S. E. Rep. 943; *Hazard* v. *Spencer,* 23 Atl. Rep. 729; *Putnam* v. *French,* 53 Vt. 402; *Malloy* v. *Bennett,* 15 Fed. Rep. 371; *Meagher* v. *Driscoll,* 99 Mass. 281; *Hoadley* v. *Watson,* 45 Maine, 289;

*Cleghorn* v. *Railroad Co.*, 56 N. Y. 44; *Crake* v. *Railroad Co.*, 36 Wis. 676; *Lewis* v. *Willoughby*, 43 Minn. 310; *Railroad Co.* v. *Hamer*, 72 Ill. 355; *Railroad Co.* v. *Boone*, 45 Md. 344; *Stewart* v. *Railroad Co.*, 90 N. Y. 590; *Perkins* v. *Railroad Co.*, 55 Mo. 202; *Railroad Co.* v. *Blocher*, 27 Md. 281.

4. A master is liable in compensating damages for injuries done by his servant acting within the scope of his employment; and if the act is such that the servant would be liable in punitive damages if the action were against him, the principal is liable in damages of that character in case he authorized or subsequently ratified the act. *Bass* v. *Railroad Co.*, 42 Wis. 654.

Mr. Chief Justice BINGHAM, of the Supreme Court of the District of Columbia, who sat with the Court in the place of Mr. Justice MORRIS, delivered the opinion of the Court:

On the trial various exceptions were reserved by the defendants to the admission and rejection of testimony by the court, to granting prayers of the plaintiffs, and the rejection of some of those offered by the defendants, and to portions of the charge given by the court to the jury on its own motion. But in the disposition of the case, we only find it necessary to discuss comparatively few of these exceptions, and mainly those which relate to the subject of punitive damages. It will be observed that the allegations of the declaration are ample to charge the defendants Flinder and Hendrick with such malice, brutality, and oppression as, if sustained by proof, would clearly subject them not only to full compensatory damages, but to such punitive damages as the jury might deem proper in the exercise of a sound discretion; and the further averments in the declaration to the effect that in all they did Flinder and Hendrick were acting under the employment, orders and authority of their co-defendants Woodward & Lothrop, would, if sustained by the evidence, authorize the same verdict against them, inclusive of punitive damages.

The law in this District upon the subject of punitive damages is very clearly stated by Mr. Justice Gray, in *Lake Shore and Michigan Southern Railway Company* v. *Prentice*, 147 U. S. 107, as follows: " In this court the doctrine is well settled that in actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injuries, may award exemplary, punitive, or vindictive damages, sometimes called smart money, if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary damages." Citing *The Amiable Nancy*, 3 Wheaton, 546, 558, 559, and seven other cases decided subsequently thereto by the Supreme Court of the United States.

Upon the question of the liability of a principal to punitive damages for the tortious acts and wrongs committed by his agent, Mr. Justice Gray, in the same case, says: "Exemplary or punitive damages, being awarded not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent. This is clearly shown by the judgment of this court in the case of *The Amiable Nancy*, 3 Wheaton, 546." Again, the learned justice quotes approvingly from the opinion of Mr. Justice Brayton in *Hagan* v. *Providence and Worcester Railroad*, 3 R. I. 88, 91, indorsing an instruction to a jury, as follows: "Punitive or vindictive damages, or smart money, were not to be allowed as against the principal, unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it,

either before or after it was committed." In commenting
on this instruction to the jury, Mr. Justice Brayton says:
"No man should be punished for that of which he is not
guilty. Where the proof does not implicate the principal,
and however wicked the servant may have been, the prin-
cipal neither expressly nor impliedly authorizes or ratifies
the act, and the criminalty of it is as much against him as
against any other member of society, we think it is quite
enough that he shall be liable in compensatory damages for
the injury sustained in consequence of the wrongful act of
a person acting as his servant."

That there is a wide divergence in the decisions of State
courts involving the liability of a principal to punitive
damages for tortious acts of an agent or servant, is admitted
in *Lake Shore, etc., Railway Company* v. *Prentice*, page 116;
and in the same case, at page 106, it is said this "is a ques-
tion not of local law, but of general jurisprudence, upon
which this court, in the absence of an express statute
regulating the subject, will exercise its own judgment,
uncontrolled by the decisions of the courts of the several
States."

The principles governing the subject of punitive damages
having been thus elaborated and settled by the Supreme
Court of the United States, it would be an act not merely
of supererogation but rather of unwarrantable assumption
for this court to attempt a further discussion on this line
based upon either principle or authority. It remains for us
to apply, as well as we may, the law thus declared by the
Supreme Court to the circumstances of the present case.

On the trial of the cause, the plaintiff having produced
evidence tending to show the employment of Hendrick by
Woodward & Lothrop as superintendent, or general super-
intendent, of the business of the latter, and of the employ-
ment of Flinder by Hendrick with the approval of Wood-
ward & Lothrop to act as a detective in the business carried
on in the store of the latter, which was extensive, requiring

a large number of clerks and employees to aid in its prosecution; and further, the evidence offered by the plaintiffs, especially by the testimony of the female plaintiff and her sister, tending strongly to show that the arrest and search of Mrs. Ragland was accompanied with such rudeness and coarseness of manner and treatment, and with the utterance of such angry, abusive and insulting language on the part of Flinder, as, if the testimony should be believed by the jury, would have authorized the jury, if they found the arrest was without cause, to have inferred such malice and criminal disregard of the rights of the female plaintiff as to justify them, in addition to compensatory damages, to assess exemplary damages against the defendants, provided the defendants Woodward & Lothrop were shown to have authorized such treatment and language before the arrest or approved the same afterwards.

From this situation on the trial, it resulted, we think, with reference to the claim of the plaintiff's to recover punitive damages, that the defendants first had the right to offer evidence to defeat the plaintiff's claim altogether, and secondly, to introduce evidence in migitation of damages of a punitive character.

The eleventh error assigned by the appellants is as follows: " In refusing to allow the appellant Hendrick to testify concerning the result of the inquiries made by him of the young lady who sold the napkin rings to the female appellee, as to whether anything was missing from her counter."

The defendant Hendrick had testified that he had seen Flinder taking the female plaintiff and her sister into a private room in the rear part of the store, Flinder leading Mrs. Ragland by the arm. Mrs. Hobson, the clerk of whom the female plaintiff had just purchased two napkin rings, who was temporarily away from her counter at the time of the arrest of Mrs Ragland, had testified that upon her return to the counter she had made an examination and found that a napkin ring was missing. Hendrick further testified that

before going into the rear room he had asked Mrs. Hobson if anything was missing, and she thereupon made the examination before mentioned, and thereupon the defendant's counsel asked Hendrick what was the result of this examination. Objection was made by the plaintiff, and the court refused to permit the question to be answered. Doubtless the reason governing the court may have been that any knowledge that Hendrick may have had must have depended on the statement of Mrs. Hobson, and therefore would be in the nature of hearsay testimony, and that none of the defendants could escape liability by showing that one of them had been told that a larceny had been committed. This view would have been correct had compensatory damages only been claimed in the declaration; but upon the charge of malice and brutality made in the declaration against all the defendants as the foundation for exemplary damages, it is pertinent evidence, tending to show with what motive the defendant Hendrick, subsequently, when appealed to by Mrs. Ragland in the rear room to interfere in her behalf, declined to do so, saying that it was a matter to be disposed of by Flinder. Nor is this view of the matter at all affected by the fact that on the trial of this cause Mrs. Hobson, after having first testified that a napkin ring was missing, subsequently, on being recalled, was led by some developments then made to her to conclude that she was mistaken in her previous statement that a napkin ring was missing. As relevant to the question of punitive damages, and the mitigation thereof, the inquiry is not so much what the fact was, but what did the defendants upon reasonable grounds believe it to be, at and during the time of the arrest. We think this testimony should have been admitted, and the proper direction given to the jury as to its application.

Again, the defendant Flinder, having testified that he had frequently induced persons who had stolen articles at the store of Woodward & Lothrop to surrender them before

leaving the premises, was asked whether had ever interfered with any person on the report of another. He was further asked whether in the discharge of his duties he had been governed in his conduct towards persons in the store on the report of others or by his own personal knowledge. Upon objection being made generally by the plaintiffs, counsel for the defendants stated they proposed to follow these questions by showing that it was within the knowledge of Woodward & Lothrop whether Flinder took the report of anybody and acted on suspicion, or whether he governed himself solely by his own observations and knowledge before acting. The court refused to allow the witness to answer either question. No evidence, of a direct character at least, had been given to the jury that Woodward & Lothrop knew of the arrest until after the female plaintiff had been discharged by Flinder. The authority of Flinder to make arrests, and the extent of it from his employers, was left somewhat to inference and conjecture from the nature of his employment as a detective, and because to some extent he was allowed to exercise his own discretion.

It would seem to have been proper that Woodward & Lothrop, in order to repel the charge in the declaration that they had authorized and empowered Flinder to arrest and maltreat the plaintiff, should have been allowed to show that it was within their own knowledge that Flinder had not, prior to the arrest of the female plaintiff, accused any one of theft unless he had seen the theft committed. When the defendant Hendrick was examined as a witness, defendant's counsel asked him whether, in making the selection of Flinder (as a detective) he acted on his own knowledge or on recommendations of others; also, in determining to employ Flinder in the character he had mentioned (a detective), by what considerations, if any, he was actuated. Also, the following question: " During the time that you have been engaged in the business which you describe yourself as having been engaged in, what, if any, knowledge have you as

to the custom or rule in large houses, such as Woodward & Lothrop, in this and other cities, in the employment of other persons in the same character as that of Flinder?" On objection of the plaintiffs, the court declined to permit the witness to answer the three questions last stated. The witness had previously stated that he had been seven years with Woodward & Lothrop, and two years with another firm in Washington, and prior thereto nearly all his life with a dry goods firm in New York City. As to the last question, it was stated by counsel for the defendants, before the court ruled upon its competency, that the object of the question was to show "that in all establishments of this character, of which witness has knowledge, not only here but elsewhere, for the protection of customers against thefts and for the protection of proprietors of such establishments, a service of this kind has been demonstrated by experience to be a necessity, and that it is a rule and a custom throughout all establishments of this kind to retain a person in such a character for the purposes for which, as he (Hendrick) says, Flinder was employed."

Again, Hendrick, having testified that, so far as he knew, he (Flinder) "got no directions as to the discharge of his duties from any one but myself; he (Flinder) was directly under me (Hendrick);" the defendant's counsel asked Hendrick the following question: "I will ask you directly whether the duties that were allotted to Mr. Flinder involved the right or duty on his part to apprehend anybody on suspicion?" And also the following question: "How far in the discharge of the duties of a detective was Mr. Flinder authorized by you to go?" Which questions were objected to generally by counsel, and the court refused to permit the witness to answer them.

In this class of cases it is incumbent on an employer to show that he has been prudent and careful in selecting his subordinates and diligent in supervising their conduct, to avoid punitive damages, or in mitigation thereof, for the

wrongful conduct of the latter.   For the purpose of rebutting
any presumption from the evidence given by the plaintiff,
that Woodward & Lothrop authorized or approved the treat-
ment of Mrs. Ragland by Flinder as thus shown, they had
the right to prove, in order to relieve themselves from the
imputation of wrongful purpose or criminal indifference to
others, that they had no knowledge of this occurrence until
afterwards; that Flinder had never been authorized by them
to so treat a customer; that so far as they knew he had never
done so before in the three years' time he had been in their ser-
vice.   For the same purpose they might show that they had
made diligent inquiries of reputable and reliable parties
as to the character of Flinder before his employment.   For
the purpose of showing that they were not resorting to an
extraordinary, unusual or unnecessary measure in appoint-
ing Flinder to this service, they might prove the necessity
for it, as demonstrated by common experience of mercantile
houses of the class of this establishment, and that it was
usual for houses of that class to employ persons as detectives
in this and other cities.   We think that such evidence was
competent to go to the jury to be considered by them in
determining whether to assess punitive damages, and, if so,
in what amount in addition to proper compensatory damages.

The court instructed the jury as to its duty in awarding
punitive damages, and referring to the charge of the court,
it is apparent that the jury should have had given to them
the testimony which was excluded from them by the court
as before stated.   The third prayer of the plaintiff, granted
by the court and given to the jury, is as follows:

"If the jury find from the evidence that the female plaint-
iff is entitled to recover damages, and if they shall further
find that the wrongs and injuries inflicted upon her resulted
from the willful, or reckless, or wanton, or malicious action
of the defendant Flinder, or that they were inflicted by him
with gross and reckless disregard of her rights while said
defendant Flinder was acting in the line of his duty to and

in the course of his employment by the defendants Wood-
ward & Lothrop, pursuant to power and authority vested
in him by them, or that his said employers, by their con-
duct, authorized or approved such said acts of the defend-
ant Flinder, either before or after they were committed, and
that said acts were done with the direction, assistance, or
approval of the defendant Hendrick, then the jury, in addi-
tion to such amount as will compensate the female plaintiff
for the injuries sustained by her, may award the plaintiffs
such additional sum as will serve as a warning and example
to the defendants to prevent the recurrence of such act in
the future, provided that the total amount of damages be
within the sum claimed in the declaration."

It may be questionable whether it is as clearly expressed
as it should have been, that the power and authority that
the defendants Woodward & Lothrop invested Flinder
with, must be found by the jury to extend to an author-
ization of "the willful, or reckless, or wanton, or malicious
action" of Flinder, mentioned in the preceding part of the
prayer, the danger being that the jury might infer that
upon proof that Flinder was guilty of these wrongs, that
the liability of Woodward & Lothrop would follow upon
mere proof that they had employed Flinder to act as a de-
tective, without more.

The remarks of the court immediately after giving the
prayer to the jury were explicit in this respect, and the jury
could not have been misled by any ambiguity in the prayer.
But the court further charged the jury: "You are to inquire
whether his (Flinder's) acts as such agent were known by
the employers, Woodward & Lothrop, and were ratified
by them." This from the context had reference to the acts
of Flinder before the event which is the subject of this ac-
tion. Surely some of the rejected testimony would have
been quite pertinent in determining this important fact.
The court instructed the jury that they might inquire
whether Flinder's acts as agent towards the plaintiff were

ratified after they were committed, by Woodward & Lothrop, and that in that inquiry he thought they might "take into consideration very properly the circumstances indicating the fact that Flinder was criminally prosecuted, that since the prosecution, and since said act was committed, as charged against him, he has been retained in the employ of Woodward & Lothrop, and whether the act that he committed on that occasion is not by the defendants Woodward & Lothrop defended here."

This is the only evidence referred to by the court as tending to prove ratification. While we think the weight of authority favors the admissability of such evidence to prove ratification in this class of cases, there are many respectable courts that have ruled to the contrary, and all agree that it may be of little or no weight unless it tends to show that the employer who may have retained the employee in his service or defended the employee in the litigation resulting from the wrongful act, participated in the motive which actuated the employee in the commission of the wrongful act for which exemplary damages are claimed. In this case the evidence does not disclose the result of the prosecution in the Police Court, nor whether Woodward & Lothrop were present or what knowledge of the facts they had up to the trial of the case, though they may be presumed to know of the allegations in the declaration, after service of process on them in this case. The record discloses no evidence that Woodward & Lothrop were defending Flinder in this action. They defended themselves, at least, but what, if any, arrangement existed between the defendants as to maintaining the defense does not appear. While we are inclined to the opinion that this sort of evidence may properly go to the jury to prove ratification, it should always be accompanied with a statement by the court of its nature, purpose and weight, and we are, therefore, impressed with the belief that this statement of the court to the jury, without other

explanation, tended to induce the jury to give to the facts embraced therein an undue weight and importance.

After quoting from a case indorsed by the Supreme Court of the United States some very appropriate extracts, the court closed his charge to the jury as follows:

" The result of this, gentlemen, is that if you find that the plaintiff was innocent of this charge, then she is entitled to recover such damages at your hands as will compensate her for the injury from the acts committed against her, against such of the defendants as you may find chargeable therefor under the instructions of the court as given you. If you find that these defendants are all responsible for compensatory damages to the plaintiffs—that is, such damages as will compensate her for the injury—and you further find that the acts done to this female plaintiff were of such a wanton,|reckless, or malicious character, or so in disregard of her legal rights as to justify you in allowing such damages as will prove a penalty for such acts and a warning against the perpetration of any act of a similar character in the future, you should allow such damages as, in your judgment, you think proper upon that point.

"As to any one of these defendants, if you find that he is not responsible, under the instructions of the court, as given to you, you should return a verdict for him, and not against him.

" You can take the case."

There can be no objection to the first full sentence in this part of the charge as to compensatory damages. But in the second full sentence, embracing the conditions upon which the jury might allow punitive damages, the court said: " If you find that these defendants are all responsible for the compensatory damages to the plaintiffs . . . and you further find that the acts done to this female plaintiff were of such a wanton, reckless, or malicious character, or so in disregard of her legal rights," etc., then the jury were to assess punitive damages. No allusion is made to any dis-

tinctions between the defendants, or any conditions upon which they were to assess punitive damages as against all of them. In this final statement of the result of the court's discussion of the duties of the jury as to the assessment of damages there should have been included all of the conditions arising from the pleadings and evidence and imposed by the law affecting their duty in assessing damages if the verdict should be for the plaintiffs. Not to do so we think was erroneous, and we cannot say that it was not prejudicial to the defendants.

The question whether petit larceny is to be regarded as a felony in this District, and to what extent, if at all, has been very much discussed by counsel, but we do not think it is necessary to consider it in the disposition of this case. True, the justice presiding stated to the jury that in his judgment petit larceny was not a felony in this District, and that the arrest of this female plaintiff by Flinder was unlawful, whether she was guilty of taking the napkin ring or not, but he gave to the jury, at the request of the defendants, and with the consent of the plaintiffs, the following instruction:

" If the jury shall find from the evidence that the plaintiff Fannie C. Ragland was guilty of taking, in the store of the defendants Woodward & Lothrop, an article of merchandise, the property of the said Woodward & Lothrop, and that for such act, and for the purpose of recovering such article, and for no other reason or purpose, the said plaintiff was apprehended by the defendant Flinder and subjected to a search, then the jury is instructed that the plaintiffs are not entitled to recover in this action."

The court again expressly and definitely directed the jury, that if they found the female plaintiff guilty of the charge of larceny they should, notwithstanding the opinion he had expressed, return a verdict for the defendants. Under such circumstances it cannot be presumed that the jury were misled, or acted contrary to their duty. Presuming

that the plaintiffs will make the same concession as to this question at another trial, as heretofore, this court prefers to reserve its decision as to it until some future occasion when the question is necessarily involved in the disposition of the case.

The jury returned damages in a large sum, exactly one-third of which was remitted at the instance of the court, as a condition to the overruling of the motion of the defendants for a new trial. It is fair to presume that this verdict included punitive damages. How much, whether more or less than the amount remitted, is not known. Neither can we determine what effect the testimony which the court below rejected, and which we are of the opinion should have been admitted, might have had on the jury, had the charge of the court been as we have before indicated it should have been. There are a number of exceptions embraced in the assignments of error of which we make no mention, because having carefully examined them we find no error in any one of them to the prejudice of the defendants. But finding that there is error as shown by the record in the particulars hereinbefore specified, *we are constrained to reverse the judgment of the Supreme Court, to which court it is ordered that the case be remanded, and that a new trial be awarded.*