**SAFEWAY STORES, Incorporated, a corporation, Appellant,**

**v.**

**Joseph M. GIBSON, III, by his mother and next friend Elsie M. Gibson, Appellee.**

No. 1668.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 19, 1955.

Decided Nov. 17, 1955.

Rehearing Denied Dec. 9, 1955.

387

Arthur B. Hanson, Washington, D. C., with whom Emmett E. Tucker, Jr., Washington, D. C., was on the brief, for appellant.

Douglas A. Clark, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This is an appeal from a judgment for assault and battery and false imprisonment. Joseph Gibson, plaintiff below, alleged in his complaint that while in one of the stores of defendant Safeway, he was assaulted by one of its agents. He claimed $100 compensatory and $2,900 punitive damages. Based on a jury verdict, judgment was entered against defendant for $30 compensatory and $500 punitive damages.

The facts, as gathered from the record, are substantially as follows: On September 4, 1954, plaintiff, a young man fourteen years of age, accompanied his mother on a shopping tour to one of defendant's self-service stores. After selecting certain articles, plaintiff and his mother went to one of the check-out counters. While he was standing with her in the line arranging her purchases in a carton, a uniformed guard, who was on duty in the store, caught hold of him by the shoulder, pulled him from the aisle, started toward the front door, and ordered him to leave and to stay out of the store. Observing this, plaintiff's mother identified herself and intervened by removing the guard's hand from her son's shoulder. Plaintiff testified that when the incident occurred, people gathered around; that he was humiliated, embarrassed, and

began crying; that his shoulder was hurting him; and that he was afraid because he had seen the guard strike two boys several days before. Plaintiff and his mother then departed. The mother's testimony corroborated that of her son in most respects.

There was testimony that plaintiff was one of several young men who would congregate from time to time in front of this store soliciting patrons for deliveries; that it was customary for them to line up with their wagons outside and to enter by taking turns; and that on one occasion, the store manager requested plaintiff to stay out of the store. A police officer testified that he had ordered plaintiff from the store at the request of the manager several weeks prior to the incident in question. This was denied by the plaintiff.

The special guard testified that he was employed by the National Detective Agency and assigned on Fridays and Saturdays to this store beginning in August 1954, his specific duties being:

"To keep the young men in the store away from the cash register, away from the customers and if and when they wanted to solicit trade they were to remain away from the door so that the customers could come in and out of the store, and to see that in soliciting the trade of carrying packages from there, that they behaved in a manner which would not be offensive to the customers. Those were my directions from the Safeway."

He also testified that prior to the date of the incident plaintiff had misbehaved in front of the store by pushing other boys who were there trying to obtain delivery jobs; that he informed plaintiff of the regulations and told him to stay out of the store unless he was carrying packages. He further stated that he performed his duties as a guard at the same store on weekends subsequent to the date of the incident, and that he terminated his employ-

388

ment with the National Detective Agency in January 1955.

■ The testimony, to say the least, was conflicting as to when the incident occurred; whether the mother was present or whether plaintiff was in the store with another boy soliciting business; and whether plaintiff had been previously instructed to stay out of the store because of his conduct. There was no conflict, however, as to the guard's placing his hand on plaintiff's shoulder, pulling him out of the aisle, and ordering him to leave the store. Clearly, a factual question was presented for the jury as to whether the conduct of the guard was within the scope of his employment. It has been held that a master may be liable in compensatory damages where he has confided to his servant duties which in the natural and ordinary course may involve the use of force upon third persons, and he has expressly or impliedly committed to the servant the determination of the particular occasion upon which such force is to be used and the particular degree of force which is to be applied.[1] Therefore, the judgment as to compensatory damages must stand since the evidence tended to show, and the jury had a right to find, that the conduct of the guard was within the scope of his employment in furtherance of the interests of his employer.

■ We next consider appellant's assignment of error concerning the court's denial of its motion for directed verdict on the issue of punitive damages. It is a well-established rule in this jurisdiction that a principal may be held liable for exemplary damages based upon the wrongful act of his

agent only where he participated in the doing of such wrongful act or had previously authorized or subsequently ratified it with full knowledge of the facts.[2] The reasons given for this rule are that since such damages are penal in character, the motive authorizing their infliction will not be imputed by presumption to the principal when the act is committed by an agent or servant, and that since they are awarded not by way of compensation, but as a punishment to the offender and as a warning to him and others, they can only be awarded against one who has participated in the offense. The principal therefore cannot be liable for them merely by reason of wanton, oppressive, or malicious intent on the part of the agent.[3] It is also well settled that in ruling on a motion for directed verdict, the evidence, with all legitimate inferences therefrom, is to be considered in the light most favorable to the party opposing the motion.[4] A trial court may not grant a motion for directed verdict where the evidence is disputed, controverted, or conflicting.[5]

■ Thus we turn to an examination of the testimony. We find many conflicts present, the most important of which concerns the source of the guard's instructions. It was brought out on cross-examination that he received his orders from the "Command of the chain of Safeway Stores." Also,

> "Q. Did you take your principal orders from the officers of the Safeway Corporation as to what you were supposed to do? A. Yes, sir.

*   *   *   *   *   *

1. Dilli v. Johnson, 71 App.D.C. 139, 107 F.2d 669; Novick v. Gouldsberry, 9 Cir., 173 F.2d 496; 57 C.J.S., Master & Servant, §§ 572, 575.

2. Wardman-Justice Motors v. Petrie, 59 App.D.C. 262, 39 F.2d 512, 69 A.L.R. 648; Aetna Life Ins. Co. v. Brewer, 56 App.D.C. 283, 12 F.2d 818; District Motor Co. v. Rodill, D.C.Mun.App., 88 A. 2d 489; cf. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214.

3. Lake Shore & M. S. R. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97; Aetna Life Ins. Co. v. Brewer, supra.

4. Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 177 F.2d 53; Knight v. Sontag, D.C.Mun.App., 99 A.2d 217; Vaughn v. Neal, D.C.Mun.App., 60 A.2d 234.

5. Baltimore & O. R. Co. v. Postom, supra.

"Q. Did you tell them what happened? A. Yes, sir.

"Q. Did they tell you that you did right? A. Yes, sir."

On redirect examination it was elicited from the guard that he still retained the orders that were written up for the guards by the Safeway Corporation; that he received these orders through the National Detective Agency; and that actually he had not spoken to anyone who was higher in the chain of command than a district manager of the chain of stores. There was no attempt by either counsel to have the orders produced; therefore it was for the jury to determine the credibility of the foregoing testimony. Clearly there was sufficient conflict as to whether the corporation authorized or ratified the agent's act, and the trial court was required to accept as true the evidence in favor of the party against whom the motion was directed.[6]

■ Also, the question of whether retention of a servant in one's employ after an assault occurs is sufficient evidence of ratification cannot be ignored and should be considered. It has been held that the retention of a servant after knowledge of his tortious conduct, plus some additional indication of approval, tends to prove ratification.[7] There was testimony, which was not denied, that the guard was subsequently employed at the store after the date of the assault. If his retention were the only evidence of ratification a different situation might be presented. But when considered in the light of the guard's statement that his act met with the approval of the defendant, it raised a factual issue which was for the jury to decide, notwithstanding the conflict in the testimony with regard to who told him he did right. It is our conclusion that there was sufficient evidence to go to the jury on the question of punitive damages, and therefore it was not error for the court to have denied the motion for directed verdict.

■■ Defendant further urges as error the charge of the court on the issue of punitive damages as incorrectly stating the law in this jurisdiction when it said:

"Punitive damages may be awarded in this case if you find that the actions of the guard were expressly or impliedly authorized by the Safeway Stores, or its authorized officers or agents by their conduct in approving it either before or after it was committed."

However, we note that the record fails to reveal any objection by the defendant to the charge. No authorities need be cited in support of the proposition that in order for a jury charge to be reviewable on appeal, exceptions must be taken in open court before the jury retires, and this fact must be shown by the record. Exceptions being presented for the first time in this court come too late.

■■ Still another error assigned is the denial of defendant's motion to set aside verdict, and for judgment or for a new trial. Defendant's main contention in support of its motion was that the verdict was contrary to the law and the evidence. However, it has been stated time and again that the granting or refusal of a new trial is within the sound discretion of the trial court unless a manifest abuse of that discretion appears.[8] The record discloses no such abuse of discretion in the present case.

We have examined the remaining assignments of error and consider them to be without merit.

Affirmed.

6. Lalekos v. Manset, D.C.Mun.App., 47 A. 2d 617; Washington Realty Co. v. Harding, D.C.Mun.App., 45 A.2d 785; Baltimore & O. R. Co. v. Postom, supra.

7. Woodward v. Ragland, 5 App.D.C. 220; McChristian v. Popkin, 75 Cal.App.2d 249, 171 P.2d 85; Sandoval v. Southern California Enterprises, 98 Cal.App.2d 240, 219 P.2d 928.

8. Brown v. Haas, D.C.Mun.App., 72 A.2d 39; Nickel v. Scott, D.C.Mun.App., 59 A. 2d 206; Yellow Cab Co. v. Earle, 8 Cir., 275 F. 928.