[Civ. No. 4872.    First Appellate District, Division Two.—November 24, 1924.]

## MARY K. GALLOWAY, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE—DECEASED STRUCK BY MOTORMAN WITH GATE-HANDLE—SELF-DEFENSE — BURDEN OF PROOF. — In an action for damages against a street-car company for the death of plaintiff's minor son alleged to have been caused by the striking of deceased by a motorman who went to the aid of the conductor in response to an emergency signal, with a gate-handle, where one of the issues in the case was whether the blow was struck by the motorman in self-defense, the burden of proof was not on the plaintiff to show that the motorman had not struck in self-defense.

[2] ID.—JUSTIFICATION FOR BODILY INJURY—EVIDENCE—PRESUMPTIONS. There is no presumption that bodily injury is justified or justifiable. He who asserts the justification must prove it by preponderance of evidence.

[3] ID.—SELF-DEFENSE—EVIDENCE—CONFLICTING INSTRUCTIONS—PREJUDICIAL ERROR.—In such action, the question whether the blow was struck by the motorman in self-defense being a material issue in the case, a conflict resulting from an instruction to the effect that before a verdict could be rendered against the defendant the evidence must satisfy the minds of the jurors by a preponderance thereof that the act of the motorman was not done in lawful defense of his own person, and another instruction that the plea of self-defense was an affirmative defense which the defendant must prove by the preponderance of evidence, and that the burden of proof in such case rested upon the defendant, must be held to be prejudicial where it cannot be determined upon what theory the jury acted.

[4] ID.—DUTY OF MOTORMAN TO ASSIST CONDUCTOR—INSTRUCTIONS OF COMPANY—ADMISSION IN PLEADINGS—INSTRUCTIONS.—In such action, where the state of the pleadings made it an admitted fact that instructions given by the defendant required the motorman, as a part of his duties as such and in the course of his employment by the defendant as such, to assist the conductor in quelling any trouble or disorderly conduct occurring on the car and to use all necessary force for that purpose, it was, therefore, error on

---

1. Liability of master for assault by servant, note, 32 **Am. St. Rep.** 95. See, also, 18 **R. C. L.** 807; 16 **Cal. Jur.** 1103.
4. See 18 **R. C. L.** 793; 16 **Cal. Jur.** 1104.

the part of the trial court, having cited in full the allegations of the amended complaint relative to instructions given by defendant, and without referring to the admissions thereof in the answer, to instruct the jury that the plaintiff had failed to introduce any testimony, proving or tending to prove "that the defendant ever gave any such instructions to the said motorman, and in determining whether or not at the time of the alleged assault, the said motorman was acting in the scope of his employment by defendant, you must find that defendant gave no such instructions to the said motorman and that the allegation that it did, is untrue."

[5] ID. — PLEADING — ADMISSIONS — INSTRUCTIONS. — In such action, where an allegation of plaintiff's amended complaint stood, by reason of the failure of defendant's answer to deny such allegation, as an admission of the instructions given by the defendant to its motorman as to what action he should take when the emergency signal of three bells was sounded by the conductor, the plaintiff was prejudiced by an instruction which practically withdrew from the jury the issue, which was highly essential to plaintiff's cause, that the motorman was acting within the scope of his employment when he struck the fatal blow because he was then acting under the instructions of his employer.

[6] ID.—EMPLOYER AND EMPLOYEE—RESPONSE TO EMERGENCY CALL—ADMISSIONS—INSTRUCTIONS.—In such action, where the allegation in plaintiff's amended complaint that the signal of three bells is known as an emergency bell, or an emergency call, from the conductor or to the motorman, and that the conductor thereby calls upon the motorman for immediate assistance, was not denied, the plaintiff was entitled to the benefit of the admissions in defendant's answer, notwithstanding that evidence was offered by defendant to show that the three bells meant to bring the car to an immediate stop, and it was error for the trial court to instruct the jury that the plaintiff had failed to prove that the signal meant anything other than to bring the car to an immediate stop.

[7] ID. — EMPLOYER AND EMPLOYEE — INSTRUCTIONS. — In such action, where it was the theory of plaintiff's case that the motorman was acting under the instructions of defendant when he answered the emergency call for three bells, and upon this theory plaintiff contended that inasmuch as the motorman was acting under the instructions of his employer when he answered the emergency call, the defendant was liable for any injuries resulting from the negligent, wanton, cruel, or tortious act of the motorman while in the performance of his duty as such and while acting under such instructions, to tell the jury that inasmuch as the plaintiff failed to prove that the defendant had specifically instructed the motorman to strike the decedent upon the head, the jury must

---

7.   Liability of master for torts of servant, note, 35 **Am. Dec.** 192.

therefore find that his tortious act, even though committed in the course of his employment and in the performance of the business of his master, as not in pursuance of any instruction of the master, was error.

---

(1) 10 **C. J.**, p. 1021, sec. 1424. (2) 5 **C. J.**, p. 664, sec. 102. (3) 38 **Cyc.**, p. 1783. (4) 38 **Cyc.**, p. 1633. (5) 38 **Cyc.**, p. 1634. (6) 38 **Cyc.**, p. 1634. (7) 10 **C. J.**, p. 1081, sec. 1474.

APPEAL from an order of the City and County of San Francisco granting a new trial. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and Walter H. Linforth for Appellant.

F. H. Dam for Respondent.

NOURSE, J.—This is an appeal by the defendant from an order granting a new trial.

The case was before this court on a previous appeal (51 Cal. App. 575 [197 Pac. 663]), wherein the plaintiff appealed from an adverse verdict. At that time the judgment of the trial court was reversed because of erroneous instructions which had been given to the jury. The second trial resulted in a verdict for the defendant which the trial court set aside on motion of the plaintiff for a new trial. In granting the motion the trial court assigned as the sole reason therefor the error occurring in four designated instructions. On this appeal the respondent relies upon the errors in these assigned instructions, and also urges that the order must be affirmed because the evidence was insufficient to support a verdict in favor of the defendant, and because of numerous other errors in instructions given or refused or modified, and for errors occurring in the course of the trial.

The facts of the case appearing on this appeal are not materially different from those recited in the former opinion, but for the purpose of convenience we will restate them. The action is one for damages for the death of plaintiff's minor son. It was alleged that the boy's death was caused

by a blow on the head inflicted by defendant's motorman with the controller-bar or gate-handle of a street-car upon which the deceased had been a passenger, and from which he had alighted just prior to receiving the injury. From the evidence it appears that the deceased, with three other companions, was traveling upon a Valencia Street car in the city and county of San Francisco when an altercation arose between the conductor of the car and the deceased over the request of the latter for transfers, to which it is conceded he was lawfully entitled. As a result of the altercation blows were exchanged between the conductor and the deceased, and the conductor gave the motorman an emergency signal to stop the car immediately after it had passed Twenty-third Street. The parties then separated and the conductor gave the signal to go ahead. Thereafter the altercation was resumed between the deceased and the conductor and a passenger gave the emergency signal of three bells, whereupon the motorman brought the car to a stop about one hundred feet north of Twenty-fourth Street and immediately opened his gate and, taking the gate-handle, stepped down upon the street from the front platform and ran to the rear of the car to give aid to the conductor. At the same time the deceased left the rear platform of the car where he was struggling with the conductor and was standing upon the street when the motorman approached the rear step. Some testimony was offered to the effect that the deceased took two or three steps toward the motorman, and it appears without conflict that the motorman thereupon struck the deceased violently with the gate-handle, causing him to stagger about in a circle and fall to the pavement and causing a concussion of the brain, which resulted in almost instant death. The evidence is conflicting as to whether he made any threats or motions to attack the motorman before he was struck the blow which resulted in his death. There is also a conflict as to whether the motorman actually struck the deceased upon the head or upon the shoulder. There is no dispute, however, that by reason of the blow which was struck the deceased fell to the pavement, and as a result of the blow, or of the fall which was caused directly by the blow, death immediately followed. From

the foregoing statement of facts it is apparent that among other things in controversy two distinct issues of fact were presented to the jury; first, whether the blow of the motorman was struck while in the course of his employment as an agent or servant of the United Railroads, and, second, whether the blow was struck by the motorman in self-defense. It is necessary to bear these two issues in mind in the consideration of the four instructions upon which the trial court based its order granting a new trial.

[1] The first of these instructions, number 15, reads in part as follows: "Before you can render a verdict against the defendant the evidence must satisfy your minds by a preponderance thereof. . . . That the act of the motorman *was not done* in lawful defense of his own person." The apparent effect of this instruction is that the jury was told that the burden of proof was on the plaintiff to show that the motorman had not struck in self-defense. This, of course, is not the law. [2] "There is no presumption that bodily injury is justified or justifiable. He who asserts the justification must prove it by preponderance of evidence." (*Hardy* v. *Schirmer*, 163 Cal. 272, 275 [124 Pac. 993, 994], citing *Marriott* v. *Williams*, 152 Cal. 710 [125 Am. St. Rep. 87, 93 Pac. 875].) [3] It is true that at another time the trial court instructed the jury that the plea of self-defense was an affirmative defense which the defendant must prove by the preponderance of evidence, and that the burden of proof in such case rested upon the defendant. In this connection, however, the instructions are hopelessly contradictory and conflicting upon a subject which was an important and material issue; in fact, the court on one occasion so instructed the jury that it could bring in a verdict for either the plaintiff or defendant upon the same state of facts, such verdict depending entirely upon the measure of proof which the jury might apply to the particular facts in reaching its decision and in regard to which the instructions of the court were directly opposite and irreconcilable. As we are unable to determine upon what theory the jury acted, the conflict must be held to be prejudicial. (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 272, 280 [201 Pac. 599]; *O'Meara* v. *Swortfiguer*, 191 Cal. 12 [ 214 Pac. 975].)

[4]   Instruction number 18 recited the allegations of paragraph 5 of plaintiff's amended complaint to the effect that prior to the day of the injury instructions had been given by the defendant corporation to the motorman that ''in case the said conductor should have any quarrel on or near said car or in case of any disorderly or offensive conduct on the part óf a passenger of said car, or in case of any emergency or trouble on or near said car . . . the said motorman was to assist said conductor in putting an end to such quarrel . . . and was to use all necessary and sufficient force in that behalf.''   The answer merely denied that instructions had been given the motorman to assist the conductor and to use force when a quarrel or trouble or disorderly conduct occurred ''near'' the car, and did not deny that the motorman was to so act when the trouble occurred ''on'' the car or that he was to use all necessary force to quell any disturbance ''on'' the car.   In view of the fact that all the evidence went to show that the disturbance occurred on the car, that the two emergency signals were given to the motorman while the disturbance was occurring on the car, and that the deceased stepped off the rear platform as the motorman was but a few steps away, the instructions given the motorman were material to plaintiff's theory of the case. The state of the pleadings made it an admitted fact that these instructions required the motorman, as a part of his duties as such and in the course of his employment by the defendant as such, to assist the conductor in quelling any trouble or disorderly conduct occurring on the car and to use all necessary force for that purpose.   It was, therefore, error on the part of the trial court, having cited in full these allegations of the amended complaint, and without referring to the admissions thereof in the answer, to instruct the jury that the plaintiff had failed to introduce any testimony proving or tending to prove ''that the defendant ever gave any such instructions to the said motorman, and in determining whether or not at the time of the alleged assault, the said motorman was acting in the scope of his employment by defendant, you must find that defendant gave no such instructions to the said motorman and that the allegation that it did, is untrue.''

[5] Paragraph 7 of the complaint alleged that the signal of three bells was the signal given by the conductor to the motorman "pursuant to the instructions of the defendant, that there is some trouble or something wrong on the car and that the conductor calls for the immediate assistance of the motorman in such emergency." This allegation was not denied in the answer and stands, therefore, as an admission of the instructions given by the defendant to its motorman as to what action he should take when the emergency signal of three bells is sounded. The facts showed without dispute that this emergency signal was sounded by the conductor immediately after the car had passed Twenty-third Street, and that it had been sounded again by a passenger in behalf of the conductor when the latter was engaged in the struggle with the deceased and was unable to give the signal himself. The motorman testified that after he heard the second call, and after the passengers had urged him to go to the aid of the conductor, he took the gate-handle, got off the car from the front platform, ran to the rear platform and met the deceased just at the rear step; that when he got off the car he went back *to protect the conductor* and that he took the gate-handle as a weapon to use if it became necessary. This was the second instruction which the trial court cited as error in granting the motion for a new trial. The prejudice to the plaintiff is apparent because the trial court by that instruction practically withdrew from the jury the issue, which was highly essential to plaintiff's cause, that the motorman was acting within the scope of his employment when he struck the fatal blow, because he was then acting under the instructions of his employer.

[6] Instruction 19 follows the error of instruction 18 in that the court entirely overlooked the fact that the essential allegations of the amended complaint referred to had been admitted in the answer. The allegation in the amended complaint is that the signal of three bells is known as an emergency bell, or an emergency call, from the conductor to the motorman, and that the conductor thereby calls upon the motorman for immediate assistance. These allegations of the complaint were not denied, but evidence was offered by the defendant to show that the three bells meant to bring the car to an immediate stop. Even so, the plaintiff was entitled to the benefit of the admissions in the answer,

and it was error in the trial court to instruct the jury that the plaintiff had failed to prove that the signal meant anything other than to bring the car to a stop at once.

[7] Instruction 20 recited the allegations of paragraph 9 of the amended complaint to the effect that the said motorman, acting in the scope of his employment and in answer to said emergency signal, and "in pursuance of the instructions theretofore given . . . to said motorman, as aforesaid, . . . negligently, recklessly, wantonly and tortiously struck" the decedent. The court then instructed the jury that the plaintiff had failed to introduce any evidence proving or tending to prove that "in pursuance to any instruction or instructions" given by the defendant the motorman had struck the decedent, and that the jury must, therefore, find that the motorman did not strike the decedent "in pursuance of any instruction or instructions given to him by the said defendant." Of course, the plaintiff did not allege or at any time maintain that the defendant had given to the motorman special instructions to strike the decedent over the head or to cause his death in any other manner. It was the theory of the plaintiff's case that the motorman was acting under the instructions of the defendant when he answered the emergency call of three bells and this, as we have seen, was an admitted fact in the case. Upon this theory the plaintiff contended, and still contends, that inasmuch as the motorman was acting under the instructions of his employer when he answered the emergency call, the defendant is liable for any injuries resulting from the negligent, wanton, cruel, or tortious act of the motorman while in the performance of his duty as such and while acting under such instructions. Thus to tell the jury that inasmuch as the plaintiff failed to prove that the defendant had specifically instructed the motorman to strike the decedent upon the head, the jury must therefore find that his tortious act, even though committed in the course of his employment and in the performance of the business of his master, was not in pursuance of any instruction of the master, was error. The foregoing four instructions were all requested by the defendant and, like the instructions which were considered on the former appeal, were contrary to the rules of law which have been laid down in cases of this kind. The only

real argument which the appellant has advanced in the support of the instructions is that they were not prejudicial. If we had any doubt upon this phase of the case the fact that the trial court deemed them of such a prejudicial character as to justify the granting of the motion for a new trial would be sufficient to warrant us in reaching the same conclusion.

The respondent earnestly urges us to review the evidence had at the second trial, and to hold that the trial court should have granted the motion for a new trial upon the assigned ground that the evidence was insufficient to support the verdict. She also urges numerous errors not specified in the order granting the new trial and assigned to instructions given at the request of the defendant, to plaintiff's instructions modified by the court, to plaintiff's proposed instructions refused by the court, and to errors in the admission and exclusion of evidence. We do not believe that it is incumbent upon us to consider questions which are not raised by the appellant unless such course is necessary to support the judgment or order appealed from.

Order affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1925.

All the Justices concurred.