[Civ. No. 4792.   Third Appellate District.—June 9, 1933.]

JACKSON DIGGS, Respondent, v. ARNOLD BROTHERS, INC. (a Corporation), Appellant.

Ralph H. Lewis for Appellant.

Charles A. Wetmore, Jr., and Ralph O. Marron for Respondent.

PULLEN, P. J.—This is an appeal from a judgment of the superior court sitting without a jury by which plaintiff was awarded damages for $3,000 against defendant for the malicious prosecution of plaintiff upon a charge of grand theft.

For several years prior to the time here involved plaintiff had been engaged in farming and fruit-raising and was also a dealer in motor cars operating under a contract with the Hudson Motor Car Company in and adjacent to the city of Marysville. This district lay within the territory of Arnold Brothers, Inc., which was the distributor in Northern California of the products of the Hudson

Motor Car Company. Under the agreement between the parties Diggs was obligated to purchase for his trade, new Hudson-Essex cars through this distributing agency.

In the month of March, 1930, an automobile show was being held in Marysville, and in order to stimulate the sales of their particular cars in that territory, Arnold Brothers, Inc., participated therein, and placed in their exhibit a certain car known as a Sun sedan. At the conclusion of the show the car was left with the Diggs agency to sell, and in a few days thereafter the car was sold through the branch agency of respondent in Oroville. The car was sold on deferred payments and the contract assigned to a finance company, and the money received thereby deposited to the account of respondent, but no remittance was ever made to Arnold Brothers, Inc.

The Marysville office of respondent was in charge of one Holtman, who negotiated the transaction and through whom the various steps necessary to close the deal were taken.

It is apparent from the record that respondent had nothing to do personally with the sale of the car nor did he personally receive any of the proceeds from the sale thereof, nor execute nor receive any of the papers connected with the passing of the title, or evidence of payment.

Respondent testified he did not know of the sale of the car until at least six weeks thereafter and did not know that Arnold Brothers, Inc., had not been paid therefor for at least two months after the delivery to the purchaser.

Early in July, 1930, the nonpayment was called to the attention of respondent and at that time he delivered to Arnold Brothers, Inc., a post-dated check for the amount due, payable July 20th. On July 19th, his business and bank account were attached by Holtman and proceedings in involuntary bankruptcy were later filed against him and the check was never paid.

In October, 1930, a verified claim was filed by Arnold Brothers, Inc., in the bankruptcy proceedings sworn to by J. H. Arnold, president and treasurer of defendant corporation, in which claim it was set forth that respondent was indebted to Arnold Brothers, Inc., in the sum of $1539.27, for goods, wares and merchandise sold and delivered to the bankrupt on an open book account. Aside from approximately $200 due for parts no other unliquidated

transaction than the Sun sedan deal was established between the parties within the time specified.

On July 3, 1931, a criminal complaint charging grand theft of the automobile in question was sworn to by A. M. Gardner, credit manager for Arnold Brothers, Inc., and a warrant issued thereon under which respondent was arrested and held until released by the posting of bail. Thereafter, before any hearing on the complaint, the district attorney of Butte County, on his own motion, caused the complaint to be dismissed. Respondent then caused this action to be filed, which resulted in the recovery of damages as above stated. The matter now comes before us on appeal from that judgment.

Appellant attacks the judgment claiming that the evidence is insufficient to support the findings in that there is no evidence of lack of probable cause; that the credit manager who swore to the complaint acted in good faith upon advice of counsel; that the credit manager was not acting in the scope of his employment when he swore to the complaint, and that the damages are excessive.

In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. We shall not attempt to recite testimony showing perhaps appellant had probable cause to believe and act as it did, but all that is required is to point out testimony, which if given credence by the trial court, would logically lead to the conclusion that appellant acted without probable cause in filing the charge against respondent. If such evidence is in the record the finding of the court must be upheld. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157].)

Let us then in the light of that rule direct our examination to the testimony in the record bearing upon the question of probable cause. The finding of the court was that "said defendant Arnold Brothers, Inc., a corporation, then and there maliciously intending to injure the plaintiff in his good name and reputation, caused a complaint to be filed . . . and maliciously and without any probable cause whatsoever, caused plaintiff to be charged" etc.

■ The burden rests upon the plaintiff in an action such as this to show lack of probable cause in the defendant (16 Cal. Jur. 737), which is measured by the state of defendant's knowledge at the time the proceeding was instituted.

■ The automobile which respondent was charged with having feloniously sold was, according to the affidavit filed by the president of the appellant corporation, in the bankruptcy proceedings some nine months prior to the institution of the criminal proceeding, sold to him on an open book account. The bookkeeper of respondent also testified that the account concerning the automobile in question was carried on the books of the Jackson Diggs Agency as an open account.

When we realize that the car in question was sold March 25, 1930, that the claim was filed in the bankruptcy court October 18, 1930, and that the complaint for grand theft of the car was not filed until July 3, 1931, the trial court was undoubtedly impressed with the long delay in determining that a criminal act had been committed.

The only witness who attempted at all to connect Jackson Diggs with the receipt of the money was the witness Holtman, who placed the attachment upon the business of Diggs, and according to the evidence, then attempted to purchase the claims against the company for fifty cents on the dollar in order to take over the business, which he subsequently did, and at the time of the trial was an agent of appellant corporation, selling Hudson-Essex cars in Marysville. The trial court may have considered this witness as not entirely impartial in his testimony. On the other hand it was testified by various witnesses that Diggs had nothing to do with the sale of the car in question, received none of the proceeds personally, had no dealing with Arnold Brothers, Inc., regarding the sale of the car until he delivered his check in July, and upon whom, the record discloses, no demand for payment of any kind was ever made until July, when he gave his post-dated check.

At the time the complaint was requested by the credit manager for appellant, no statement, according to the testimony of the district attorney and of his secretary, was made regarding any bankruptcy claim having been filed by Arnold Brothers, Inc., in the estate of Jackson Diggs. We also must bear in mind that numerous character wit-

nesses were called for the plaintiff, all of whom testified to the reputation of the plaintiff for truth, honesty and integrity in the vicinity in which he had lived and carried on his business for many years.

■ We next come to the second point urged by appellant as a defense to the action, that is advice of counsel. The defense of advice of counsel is an affirmative one and therefore the burden of establishing such defense rests upon the defendant and the testimony adduced must be examined in that light to ascertain if the burden has been met. It here devolved upon appellant to show that it stated to the attorney fully and fairly all of the facts of the case and that after statement of all of such facts, it was advised by such attorney that a crime had been committed.

In the recent case of *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578, 581], the court was considering a case where it did not affirmatively appear that all of the facts were stated to the attorney, the court saying: "Touching the defense that appellant proceeded, not on his own judgment, but on the advice of the district attorney, we have referred to the evidence that appellant did not inform the district attorney that respondent was claiming title to the beds, and it was not shown that the district attorney had learned of such claim from any other source. The jury would, therefore, be justified in finding, that the statement given to the district attorney, upon which he based his advice to appellant, in the first instance, did not constitute a full and fair recital of the facts. Under such circumstances the opinion of the district attorney could not be relied on to establish probable cause for the prosecution."

■ So in the instant case it appears that Gardner, credit manager for appellant, did not inform any of the attorneys whom he consulted that Diggs claimed the car had been sold on open account and that this fact was substantiated by a verified statement of the president and manager of the appellant.

In the case of *Murphy* v. *Davids,* 181 Cal. 706 [186 Pac. 143], the court there held that the defendant may not testify he honestly stated all the facts to his counsel, for it is a question for the court to determine, whether he did in fact honestly state all of the facts to counsel.

Not one of the various counsel to whom the officers of appellant allege they stated the facts of the case were placed upon the witness-stand to testify as to what facts were told them or what advice, if any, was given, with the exception of the district attorney of Butte County, who testified that he was not told all of the facts in the case, and that when he later learned of certain facts not told him by Gardner, he caused the complaint to be dismissed.

Appellant next questions the authority of Gardner, its credit manager, to cause the complaint against Diggs on a charge of grand theft to be issued. It is admitted that Gardner was the credit manager and employee of Arnold Brothers, Inc., and had been for about six years. About a month before the criminal complaint was filed he was instructed by the secretary of the appellant corporation "to take it (Diggs file) over and investigate it and see if there was anything that could be done to collect any portion of the money".

Having in view the length of time elapsed between the filing of the claim in bankruptcy, that is October 18, 1930, and the filing of the criminal complaint, that is July 3, 1931, the court may well have assumed that during that time appellant was waiting to see what amount, if any, would be recovered through bankruptcy and then despairing of getting the full amount of the claim by that means, adopted the all too common practice of credit men of resorting to the criminal courts to coerce debtors into making further payments.

None of the officers of the corporation, so far as it appears in the record, either before or during the trial, disavowed the acts of their credit manager. On the other hand, we find certain letters to the district attorney of Butte County from the corporation referring directly to such a criminal proceeding. It therefore not only appears that the agent Gardner in procuring Diggs' arrest was acting within the scope of his authority, but it further appears from the evidence, and the inference is to be drawn therefrom, his action in procuring the arrest was instigated and ratified by appellant. The rule seems to be clearly expressed in the case of *Allen* v. *London etc. Ry. Co.,* L. R. 6 Q. B. 65: "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of

recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property, it is done merely for the purpose of vindicating justice.''

█ Finally appellant assigns as a point for reversal that the damages awarded by the court are excessive. In a case of this kind there is no inflexible rule by which the amount of damages to be awarded can be determined. A verdict will not usually be disturbed as excessive unless the amount is so large as to be presumptively the result of passion or prejudice. In determining the amount of damages the court may consider the character and position of the parties and all of the circumstances attending the transaction. █ Newspaper articles are admissible in evidence for the purpose of proving the damage caused, such publication being a consequence in the ordinary and natural course of events for which defendant is answerable. We quote from the opinion of the trial judge which indicates clearly the facts which led him to reach the conclusion he did as to the amount involved, all being elements properly to be weighed and considered in determining the amount, if any, to be awarded as damages.

''The plaintiff, Jackson Diggs, had been in business in and around the city of Marysville for a number of years, and according to the manager of one of the leading banks of Marysville held a splendid reputation as a business man and a fine credit therefor. That he has sustained damages there is no question. It is not altogether simply the trouble of coming from the city of Piedmont, California, to Oroville to surrender to the sheriff under the warrant of arrest, but the great damage to this plaintiff lies in having it notoriously published in the newspapers of wide and general circulation that he was charged with grand theft, which must necessarily have injured him to considerable damage and from the fact that no amount of money paid him at this time can take away from him the stain of being charged as a thief, but the only way the law can in any manner recompense

him would be by money judgment, which in our opinion, and we now find to be, the sum of $3000.00.''

We fail to find any reason for a reversal of the judgment, and the same is therefore affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have. the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1933.