[Civ. No. 17305. Second Dist., Div. Two. June 27, 1950.]

JOE NORMAN SANDOVAL, Respondent, v. SOUTHERN CALIFORNIA ENTERPRISES, INC. (a Corporation), et al., Appellants.

Reginald I. Bauder, W. I. Gilbert, Jr., Zagon, Aaron & Sandler and Henry F. Walker for Appellants.

Henry S. Cohen and Bernard B. Cohen for Respondent.

MOORE, P. J.—By reason of the loss of two front teeth, lacerations, bruises and contusions of his body, the consequent shock to his nervous system as well as pain and mental anguish, respondent sued the defendants for wanton and malicious attacks upon him and demanded compensatory damages in the sum of $25,000 and punitive damages in the same amount. In a second count he claimed $15,000 compensatory damages for his malicious prosecution by the defendants resulting in injury to his reputation, hurt to his feelings, embarrassment and inconvenience and $350 for counsel fees in defending the charges against him. Also, he demanded exemplary damages in the sum of $10,000. Following a trial, a jury awarded respondent $25,000 as compensatory damages on the first count and punitive damages against defendants as follows: against Veitch, $4,500; against Haley, $1,000; against the corporate defendant, $2,000. On the second count the jury awarded respondent the sum of $10,350 as compensatory damages and against defendant Mooney, $2,500 as punitive damages. Upon such verdicts judgment was duly entered, from which came this appeal.

Respondent is a singer, musician and orchestra leader. About 9 o'clock p. m. on November 20, 1947, he appeared at the front entrance of the Palladium, a dance hall on Sunset Boulevard in Los Angeles operated by the corporate defendant. He requested free admission for the purpose of conferring with the orchestra leader concerning employment. After he had been denied free admission by the ticket taker, appellants Veitch ·and Haley, special officers employed by Palladium, escorted him to the side entrance for the purpose of seeing appellant Mooney, assistant manager of the hall. Having been there denied free admittance, respondent purchased a ticket, but admission was again refused on the ground that he was intoxicated. Thereupon Veitch grabbed respondent

by the shoulders and shoved him down the sidewalk. He then called at the rear entrance to demand a refund on his ticket but before his arrival at the ticket office, Veitch and Haley appeared, forced him to accompany them out to Argyle Street which extends northward from Sunset. After going some distance, Veitch struck respondent in the face with brass knuckles, knocked him to the ground where he was brutally kicked by both officers. He was then taken back to the rear of the club, kicked and beaten several times en route and on arrival appellant Mooney appeared. He telephoned for the police and while all were waiting, respondent attempted to rise, whereupon Mooney kicked his legs from under him.

Police Officers Bean and Lloyd of the Hollywood division took respondent in their patrol car to the Hollywood receiving hospital where he was treated for his injuries. Then he was taken to jail and booked and his fingerprints made. Subsequently he was charged with drunkenness, a misdemeanor, but upon a later trial was acquitted.

### Respondent's Testimony Concerning the Occurrences at the Receiving Hospital Was Not Prejudicial

In the course of respondent's testimony he was permitted over objection to testify to conversations between himself and the physician and between himself and the police officers for the limited purpose of showing that he had a recollection of what was said and as a part of his proof that he was not intoxicated at the time. The testimony concerned statements made by the doctor in the course of his treatment of respondent and the statements of an officer to the effect that respondent had received a "bum deal" and of another officer who apparently scoffed at respondent's statement that he was a singer and who asked him to sing for the policemen. There was no error in admitting such testimony. If an extrajudicial utterance is offered, not as an assertion to prove the truth of the declaration, but without reference to the truth of it, the hearsay rule does not apply. When the mental state of a person at a particular time is material, evidence of such person's declarations at the time indicative of his current mental state is admissible as within an exception to the hearsay rule. (*People* v. *Kynette,* 15 Cal.2d 731, 754 [104 P.2d 794] ; *People* v. *Singh,* 19 Cal.App.2d 128, 129 [64 P.2d 1149] ; *Bridge* v. *Ruggles,* 202 Cal. 326, 330 [260 P. 553] ; *Donnelly* v. *State,* 26 N.J.L.R. 463, 495; same, affirmed, 26 N.J.L.R. 601, 610.) Such testimony was admissible upon the

further ground that a person's power of perception, the accuracy of his deductions and the integrity of his memory may be greatly affected by his condition as to sobriety. (*People* v. *Salladay*, 22 Cal.App. 552, 555 [135 P. 508].) The testimony was especially significant in that at the commencement of the trial, appellants' counsel had stated that he had proof that respondent could not remember the names of the people he had seen on the night of his visit to the Palladium, and that he was too drunk to write his name.

### No Error in Excluding a Witness' Prior Written Statement on Direct Examination

The witness Christoffer was the ticket taker at the Argyle entrance to the dance hall. After he had testified that he did not see plaintiff "throw punches at Mr. Veitch" appellants' counsel undertook to show the witness his statement written on the day following the tragedy. It was excluded on the theory that it was not needed to refresh the witness' recollection and that it constituted an attempt by appellants to impeach their own witness, he having testified that the statement did not refresh his recollection. Moreover, the witness had testified in court the same as he had at the time his deposition was taken. Appellants contend that under section 2049, Code of Civil Procedure, a party may impeach his own witness by showing prior inconsistent statements. They insist that (1) surprise is not a statutory requirement for the admission of a prior inconsistent statement and (2) if appellate decisions approve of such practice, it is judicial legislation forbidden to the courts, citing *Crocker National Bank of San Francisco* v. *Byrne & McDonnell*, 178 Cal. 329, 335 [173 P. 752] ; III Wigmore on Evidence, 3d edition, page 383. But regardless of Wigmore's criticisms of the California rule, it is here established that the right to impeach one's own witness is confined to cases wherein a party is taken by surprise on account of the character of the testimony of the witness whom he has himself called under an honest belief as to what his testimony would be. *Estate of Relph*, 192 Cal. 451, 458 [221 P. 361] ; *People* v. *Flores*, 37 Cal.App.2d 282, 286 [99 P.2d 326] ; *People* v. *Reynolds*, 48 Cal.App. 688, 693 [192 P. 343].) Whether a party is surprised at the conduct of his witness is itself a fact to be ascertained by the trial court based upon the demeanor of the surprised person. Therefore, a ruling upon an offer made on the ground of surprise is an exercise of discretion. (*People* v. *Jaggers*, 120 Cal.App. 733, 738 [8 P.2d

206].) Of course, there can be no surprise when a witness testifies in conformity with his deposition testimony given in the same action even though he thereafter testifies at the trial unfavorably to the person calling him. (*Estate of Dolbeer,* 153 Cal. 652, 661 [96 P. 266, 15 Ann.Cas. 207].)

It is also contended that the court erred in permitting respondent over objection to exceed the scope of cross-examination. Christoffer had testified as to his employment, as to having seen respondent walk toward the box office and of his having been stopped by Veitch and Haley who walked respondent to the street as they held him by the arms, but he did not see them after they turned north on Argyle. On cross-examination the witness testified there was a telephone 12 feet from his station; Mooney did not come to the Argyle entrance while respondent and the two officers were on the sidewalk; respondent was not staggering but appeared sober; he did not see respondent attempt to strike Veitch; cars were parked solidly along the Argyle fence; he could not see what happened on the sidewalk; he heard Veitch yelling in the vicinity where last seen; Veitch's voice was the only one heard; the trio returned to the Palladium with Veitch and Haley holding respondent; Mooney did not appear on the scene before the trio had gone behind the Palladium; he heard respondent several times yell "let me go." In support of such contention, they cite *People* v. *Montgomery,* 47 Cal.App.2d 1, 18 [117 P.2d 437]; and *McClung* v. *Camp,* 132 Cal.App. 55, 56 [22 P.2d 238].

Fixing the limits of cross-examination is within the discretion of the trial court. (*Estate of Higgins,* 156 Cal. 257, 264 [104 P. 6].) It is a familiar principle also that testimony which has a logical tendency to rebut an unfavorable inference which might have been drawn from the direct examination of the witness may be developed by the cross-examiner. (27 Cal. Jur. 103; 108 A.L.R. 168.) Since the witness had testified on direct as to respondent's condition and that he had been told to keep on the lookout for respondent and that the officers were holding him, the jury might have inferred that respondent was denied admission because he was drunk and combative. Therefore it was proper for the witness to testify on cross-examination that respondent appeared sober. Also, having testified that he had seen respondent going up the walkway, it was at least not harmful on cross-examination for him to testify that respondent did not stagger. On the witness' testimony that he heard Veitch yelling, it was not out of place

on cross-examination for him to testify what he saw. But granting that such inquiries went beyond the scope of proper cross-examination it could not be prejudicial since it was merely cumulative. (*Roy* v. *Salisbury,* 21 Cal.2d 176, 186 [130 P.2d 706].)

Mrs. Guilley, the cashier in the box office, had already given substantially the same testimony. And the location of the telephone had been shown by defendant's exhibit A to have been about 10 feet from where Christoffer stood. The cross-examination was proper for the further reason that a part of the act of the two officers having been given in evidence on direct, the whole of the same subject was the proper topic of inquiry on cross-examination. (Code Civ. Proc., § 1854.) One of the most important purposes of a liberal range of cross-examination is to elicit from an adversary witness material which has been glossed over or suppressed. (*People* v. *Jones,* 160 Cal. 358, 364 [117 P. 176].) It cannot be said that by allowing the liberal cross-examination of a witness the court exceeded the bounds of reason. (*Berry* v. *Chaplin,* 74 Cal. App.2d 669, 672 [169 P.2d 453].) But even conceding error in the ruling, it cannot be said that a miscarriage of justice resulted.

 Appellants contend that it was prejudicial error for the court to refuse to allow them to cross-examine and impeach the witness concerning new material adduced by respondent outside the scope of direct examination. They insist that they should have been permitted to introduce the witness' prior written statement, inconsistent with his testimony on cross-examination, inasmuch as the witness Christoffer upon the new material became respondent's witness and was therefore subject to impeachment on such matter. But for reasons heretofore mentioned, respondent did not exceed the limits of proper cross-examination. To allow the introduction of such document by defendants would have been to impeach their own witness which as above shown was not permissible in the absence of a showing of surprise. The contents of the paper were hearsay and could not have been admitted as proof of the facts contained therein.

THE ALLEGATIONS OF MALICIOUS PROSECUTION ARE SUPPORTED BY THE EVIDENCE

 Appellants contend that the proof does not correspond with the allegations of the count for malicious prosecution. They say that it is alleged that defendant Mooney falsely

caused plaintiff to be arrested for drunkenness and caused a complaint to issue charging him with that offense whereas the evidence shows that the criminal complaint was issued by the city attorney and was prosecuted by city officials. However, it is not alleged that defendant Mooney personally made the arrest or caused the complaint to issue and there is evidence to support an implied finding that Mooney gave the information to the prosecuting authorities in such manner that in the orderly course of police procedure respondent was arrested and the criminal complaint resulted. Such proof is sufficient to support the judgment for malicious prosecution. (*Blancett* v. *Burr,* 100 Cal.App. 61, 62 [279 P. 668].) In the latter case it was held unnecessary to find against a defendant that he personally made the affidavit required for the issuance of a complaint in order to make him liable for a malicious prosecution. The test is whether a defendant in such an action was actively instrumental or was the proximate cause of maliciously putting the law in motion. (*Collins* v. *Owens,* 77 Cal.App.2d 713, 719 [176 P.2d 372].) That Mooney was the inducing cause of the arrest and prosecution is shown by the facts that he called the police after he and the special officers had attacked respondent and that he told them when they arrived that respondent had caused a disturbance and was under the influence of liquor. After that, respondent was taken by Officers Lloyd and Bean to the receiving hospital, thence to the jail. There he was booked and Officer Lloyd made the arrest report. In that writing he related plaintiff's condition as of the time of the booking. A criminal complaint was issued by the city attorney's office on the basis of the arrest report which is standard police procedure. Appellants contend that such facts show that Mooney made no arrest and did not participate in the prosecution; that an arrest for a misdemeanor may be made without a warrant at night only when committed in the presence of the arresting officer. Also, they contend that it is presumed that an official duty has been regularly performed and that such presumption has not been rebutted. (Civ. Code., § 1963, subd. 15.) But the evidence supports the finding that Mooney instigated the prosecution without probable cause through his friend, Officer Bean, for the purpose of concealing the attack by Veitch and Haley on respondent and as a means of discouraging respondent from pressing a civil action for the battery. That evidence is substantially as follows:

Mooney was friendly with the police officers; had played golf

frequently with Bean and had visited in his home; he called the police station specifically requesting Bean and Lloyd to come. He had knocked respondent down to prevent him from running away while they were waiting for the police. He testified that he called the officers because he felt that plaintiff required medical attention, notwithstanding he had first-aid equipment at the club. Also, he could have called the Hollywood jail for assistance without calling specifically for Bean. It was not difficult for the jury reasonably to infer that Mooney's statement to his police friends that respondent was under the influence of liquor was made for the purpose of inducing a prosecution of respondent. Several days thereafter Mooney inquired of Bean what had been done with respondent and later inquired as to the outcome of the trial.

Officer Haynes of the city attorney's office issued the complaint on the basis of the arrest report of Bean and Lloyd. The report stated that plaintiff had a cut on his chin from unknown causes; had been drinking; his gait and speech were fair; attitude cooperative; eyes watery; face pale; coordination good. The name *Palladium* did not appear in any report. Medical and arrest reports contained statements of the lacerations but made no reference to respondent's broken teeth. Mooney testified that he did not call an ambulance because respondent was drunk, but that he had brought respondent back onto the club property in order to give him medical treatment. However, the latter did not receive first aid at the Palladium.

Appellants contend that Lloyd alone was responsible for the arrest report. But Lloyd testified that it was made on behalf of both officers and he admitted that respondent had informed him that he had been struck by someone. While Bean and the physician at the receiving hospital testified that respondent was belligerent and had to be held down for treatment, Lloyd testified that he was cooperative. While the words "too drunk" had been written on the fingerprint identification sheet over the line for respondent's signature, Lloyd testified that respondent could have written his name, and that he had been told of respondent's broken teeth. The latter fact did not appear in the report. While the physician testified that respondent had a strong alcoholic breath, both Veitch and Haley testified they had noticed none or only a faint odor. The witness at the café where respondent ate dinner detected no alcohol on his breath. Although the cashier at the club testi-

fied that respondent's speech was somewhat thick, yet both Haley and Mooney understood him perfectly. There is substantial evidence that Lloyd, Bean, Jailer Reed and the doctor had been well acquainted for sometime and that the three officers were on friendly terms with Mooney. From the foregoing testimony the presumption was reasonably overcome in the minds of the jury that the officers performed an official duty.

## The Evidence Reasonably Warrants the Award of $2,000 Punitive Damages Against the Corporate Defendant

■ Appellants contend that there is no evidence of any ratification by the employer of the acts of its employees. In support of such contention they cite *Edmunds* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 174 Cal. 246, 249 [162 P. 1038], and *Foley* v. *Martin*, 142 Cal. 256 [71 P. 165, 75 P. 842, 100 Am.St.Rep. 123]. These authorities lay down the general rules with reference to the principal's knowledge of the acts of his agent and of his having sufficient opportunity to investigate after gaining knowledge. In both cases proof of ratification by the employer was attended by showing his retention of the employee. In the instant case Mooney was assistant manager of the Palladium and in complete charge on the night of November 20, 1947, the manager being absent. He testified that he saw Veitch and Haley on the Argyle sidewalk and a fight was in progress. Mooney himself knocked the respondent down. Officer Bean testified that Mooney told him of what Sandoval was supposed to have done. Veitch testified that he had told the manager what had happened. Haley testified that neither Mooney nor the manager had reprimanded or criticized him. Haley continued in the employment of the Palladium for about one year after the incident, and Veitch was still in its employ at the termination of the trial. Such evidence was sufficient to warrant the jury's deduction that Mooney knew what had happened to respondent and that as a consequence his principal, the Palladium management, had ample opportunity for a full investigation. The retention of the employees after full knowledge of the facts, after respondent had been acquitted of the charge of drunkenness, amply supports the inference of ratification. (*McChristian* v. *Popkin*, 75 Cal.App.2d 249, 256 [171 P.2d 85].) The award of punitive damages against corporate defendant is not unreasonable in the light of such evidence. The facts that it operates a popular rendezvous for pleasure seekers in one of the most popular sections of Los Angeles, has two entrances,

employs a manager, assistant manager and special officers to preserve decorum are sufficient evidence of the corporation's wealth to warrant a $2,000 fine for a malicious and unwarranted battery of a peaceable citizen.

## No Error in the Instruction With Reference to Intoxication

Appellants criticize the following instruction:

"The proof that a person has partaken of intoxicating liquor is not in itself proof of intoxication or that a person is under the influence of intoxicating liquor." Appellants contend that thereby the court "instructed the jury as a matter of law that proof of consumption of intoxicating liquor does not establish intoxication or that the consumer was under the influence of liquor." But just before the quoted instruction was given, the court advised the jury as to what is meant by being under the influence of intoxicating liquor and also immediately after the quoted instruction the court stated to the jury that whether a person is intoxicated is a question of fact to be determined upon all the evidence in the case. In addition thereto the jury were directed to consider all the instructions as a whole and to regard each in the light of all the others. A reasonable interpretation of the quoted instruction is that the mere fact that a person has consumed alcoholic beverage is not of itself proof of intoxication. The jury having heard the instruction are deemed to have understood and applied it to the evidence. (*Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689, 697 [89 P. 976].) The instructions as a whole should be given a reasonable interpretation and the words employed will be construed in accordance with their natural and ordinary meaning. (*Barlow* v. *Crome*, 44 Cal.App.2d 356, 361 [112 P.2d 303].)

## The Instruction on Probable Cause Was Not Erroneous

Appellants assign the following instruction as prejudicial error:

"In determining whether there was probable cause for the defendant Mooney to instigate or cause the prosecution of the plaintiff—if he did—you are instructed that before probable cause can be said to exist, it is not only necessary that you find from the evidence that the defendant Mooney had a suspicion that the plaintiff was drunk or intoxicated, but you must also find from the evidence that such a suspicion, if any, was founded upon circumstances sufficiently strong to warrant

an·ordinarily prudent person in believing that the plaintiff was drunk or intoxicated. If the circumstances were not sufficiently strong to warrant an ordinarily prudent person in the belief that the plaintiff was drunk or intoxicated, then there was a lack of probable cause for the prosecution of the plaintiff, if any.''

Appellants contend that such instruction is contrary to law, citing *Grant* v. *Moore,* 29 Cal. 664, 655, and *Brock* v. *Southern Pac. Co.,* 86 Cal.App.2d 182, 194 [195 P.2d 66]. They assert that the burden rested upon respondent to prove want of probable cause, citing *Galloway* v. *United Railroads,* 69 Cal. App. 770, 774 [232 P. 491]. The latter case was an action for assault and battery in which the defendant pleaded self-defense. The following instruction was there under consideration, to wit, ''before you can render a verdict against the defendant the evidence must satisfy your minds by a preponderance thereof . . . that the act was not done in lawful defense of the person.'' In holding such instruction erroneous, the court said that the effect of the instruction was that the jury were advised that the burden of proof was on the plaintiff, contrary to law. Although other instructions correctly advised the jury the quoted passage simply created a clear conflict in the instructions. Appellants here admit that the jury were properly instructed on the burden of proof but contend that the quoted instruction creates a conflict and is therefore reversible error. But the Galloway decision is not controlling. Much stronger language was used there than in the instruction here under consideration. The Galloway jury were instructed ''before you can render a verdict'' and ''the evidence must satisfy your minds by a preponderance thereof.'' Such phrases are of doubtful virtue and are not to be found in the quoted instruction on probable cause. Furthermore, as the court pointed out in the Galloway case, instructions were ''hopelessly contradictory and conflicting,'' and on one occasion the jury were told that it could bring in a verdict for either party on the same state of facts in regard to which the instructions were directly opposite. In the case at bar, the jury were instructed fully as to the meaning of ''preponderance of the evidence'' and that the burden of proof was on the plaintiff. In *Burke* v. *Watts,* 188 Cal. 118 [204 P. 578], the jury were instructed that ''if you find . . . the defendant . . . communicated to the district attorney . . . all of the material facts known to him . . . and then acted upon the advice of the district attorney, the presumption of malice and

want of probable cause is rebutted.'' The defendants there contended that the instruction implied that there was a presumption of malice. But the court rejected this contention notwithstanding the instruction standing alone might tend to convey an erroneous impression to the jury as prior instructions had repeatedly stressed that the burden was on the plaintiff to prove want of probable cause and malice and that therefore the defendant had suffered no prejudice.

## FORMULA INSTRUCTION NOT ERROR

The following formula instruction was given: ''If you find from the evidence that the defendant Mooney caused or instigated the prosecution of the plaintiff on a charge of being drunk or intoxicated, and at that time the defendant Mooney did not have a reasonable ground of suspicion, based upon circumstances sufficiently strong to warrant an ordinarily prudent person in the belief that the plaintiff was drunk or intoxicated, then I instruct you that there was a lack of probable cause for the prosecution of the plaintiff; and if you further find from the evidence that the defendant Mooney acted maliciously in causing the prosecution of the plaintiff, if any, then your verdict must be for the plaintiff and against the defendant Mooney on the alleged malicious prosecution cause of action.'' Appellants assign this instruction as prejudicial in that it incorrectly directed a verdict since it fails to contain the essential factor which would have precluded recovery by respondent. The absent factor is, they say, that if the jury found that the plaintiff was guilty of the crime charged in the criminal proceedings plaintiffs could not recover even though the elements set forth in the instruction were all present. Citing *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 170 [153 P.2d 338], in which it was said that a formula instruction may be justified only where it contains all the elements essential to recovery and the absence of any one element may not be cured by the fact that other instructions state the omitted factor. They argue that under the instruction as given if it had been found that Mooney did not have probable cause to investigate respondent's arrest and prosecution even if he had been guilty of intoxication he could recover. Such, they contend, is not the law. Also, they contend that the guilt of the plaintiff in an action may be established in the civil suit and that such guilt is a bar to recovery regardless of a prior acquittal, citing Restatement of Torts, section 657; *Illinois Central Ry. Co.* v. *Anderson*, 206 Ky. 600 [268

S.W. 311]; *Bacon* v. *Towne,* 58 Mass. (4 Cush.) 217, 241; *Mack* v. *Sharpe,* 138 Mich. 448 [101 N.W. 631, 5 Ann.Cas. 109]; *Sears* v. *Hathaway,* 12 Cal. 277.

*Sears* v. *Hathaway,* involving a criminal charge brought by the defendant, was dismissed upon a technicality. The court there said that where the evidence in the civil suit showed plaintiff to be morally guilty he could not recover. But the rule laid down by Prosser on Torts, page 869, is that proof of guilt of the plaintiff is an absolute defense. There was no error in the formula instruction. When read with the entire charge as a whole it is seen that the interests of the defendants were protected. The jury were advised that they could not infer want of probable cause from the acquittal in the criminal action; that whether plaintiff was drunk or not was a question of fact for their determination from all the evidence. (*Carney* v. *RKO Radio Pictures, Inc.,* 78 Cal.App.2d 659, 667 [178 P.2d 482].) In the Carney case it was said that the formula instruction was to be considered not separately but as a part of the entire charge. It has now become the established rule that if an element omitted from the ideal formula instruction is fully covered by other instructions and the jury was not misled, the omission of the one element is not prejudicial. (*Dawson* v. *Boyd,* 61 Cal.App.2d 471, 483 [143 P.2d 373]; *Portman* v. *Keagan,* 31 Cal.App.2d 30, 36 [87 P.2d 400].)

## THE DAMAGES ARE NOT EXCESSIVE

Under the proof it cannot be reasonably said the compensatory damages awarded for the battery of respondent are excessive. It is established that Veitch and Haley forced respondent from the entrance to the Palladium out to Argyle Street holding his arms up and behind his back; Veitch struck respondent twice in the mouth with brass knuckles while Haley held the victim; while respondent was on the ground Veitch screamed at and cursed him and kicked all parts of his body for four or five minutes; both men kicked and beat respondent and forced him to accompany them to the rear of the Palladium; respondent was rendered unable to walk without assistance; he was thrown face downward to the ground. After he had been released from jail his appearance was as if he had been in an accident and he was barely able to speak. The physician who rendered him first aid testified that he had multiple bruises and lacerations, swollen lips and jaw and tender Adam's apple; neck movements restricted 50 per cent; bruises on his body; two upper front teeth broken. At the time of his

examination respondent appeared to be suffering severe pain in his throat and was nervous and upset. Thirteen months after receiving the injuries there was a definite tenderness of the body and he had a smooth pale scar one inch by three-sixteenths inch on his face for a permanent affliction. On the night of the assault he could not sleep nor eat; the use of his wrist was restricted for five months; he could not sing for six or eight months; he could not shave normally for four to five months; at the trial he was still nervous and upset and had an intermittent twitching in his back. In addition to the physical injuries, pain and suffering and deformities caused respondent, he suffered a profound emotional upset and a disruption of the nervous system, which are serious factors that lend support to a judgment where it is attacked on the ground of an excessive award. It is a scientific truism that the extent of personal injuries cannot be measured solely by objective signs. While traumatic injuries may leave few or no outward signs of bruises and contusions, yet a severe concussion of the brain or ''injury to the nervous system may result in far greater or more lasting pain and disability than do many types of injuries which are plainly visible.'' (*Deevy v. Tassi*, 21 Cal.2d 109, 120 [130 P.2d 389] ; *Coleman v. Galvin*, 66 Cal.App.2d 303, 305 [152 P.2d 39] ; *Johnson v. Pearson*, 100 Cal.App. 503, 506 [280 P. 394].)

Moreover, mental suffering will vary in every case with the nervous temperament of the individual. (*Merrill v. Los Angeles Gas & Elec. Co.*, 158 Cal. 499, 512 [111 P. 534, 139 Am. St.Rep. 134, 31 L.R.A.N.S. 559].) The evidence shows that respondent was a musician and a singer with a highly emotional temperament. When he first viewed his face in the mirror at the hospital he wept bitterly. A dentist testified that he made two sets of caps for respondent's teeth for the reason that a porcelain crown can easily be fractured and such an incident would be highly embarrassing to respondent if unable immediately to replace them while engaged in his occupation. The manner of committing an injury may be such that the principal basis of damages is injury to the feelings. Therefore, when a person of a sensitive nature is brutally beaten the wrong is a shock to the moral sensibilities and tends to vex, disgrace and humiliate the injured party and he experiences extreme fear and emotional disturbance.

There is no showing of passion or prejudice. The jury were fully instructed as to their proper duty and for over four

hours they deliberated and several times returned to the court for further instruction and clarification.

The reviewing court is limited in its authority to interfere with the amount of damages awarded for personal injuries. The power to alter the amount exists only when the facts are such that the excess clearly appears as a matter of law or suggests at first blush passion, prejudice or corruption on the part of the jury. (*Brown* v. *Boehm,* 78 Cal.App.2d 595, 596 [178 P.2d 49] ; *Lahti* v. *McMenamin,* 204 Cal. 415, 419 [268 P. 644].)

In support of their contention that the award of $25,000 is excessive compensation for the personal injuries suffered by respondent, appellants cite *O'Donnell* v. *Excelsior Amusement Co.,* 110 Cal.App. 685 [294 P. 737, 295 P. 86] ; *Robbins* v. *Roques,* 128 Cal.App. 1, 7 [16 P.2d 695] ; *Bellman* v. *San Francisco H. S. Dist.,* 11 Cal.2d 576 [81 P.2d 894] ; *Mudrick* v. *Market Street Ry. Co.,* 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533] ; *Hallinan* v. *Prindle,* 17 Cal.App.2d 656 [62 P.2d 1075] ; *Foshee* v. *Wolters,* 86 Cal.App.2d 766 [195 P.2d 930] ; *Kambourian* v. *Gray,* 81 Cal.App.2d 783 [185 P.2d 27] ; *Mondine* v. *Sarlin,* 11 Cal.2d 593 [81 P.2d 903] ; *Gackstetter* v. *Market Street Ry. Co.,* 10 Cal.App.2d 713 [52 P.2d 998], and others. But they are either older cases when the price of money was not a factor or they were purely negligence actions or otherwise distinguishable and do not warrant a reduction of the judgment.

Finally, appellants contend that the award of $10,350 as compensatory damages in the malicious prosecution action is excessive. The facts are that plaintiff was restrained of his liberty by his arrest at the Palladium, conveyed in a patrol car to the receiving hospital from which after treatment he was lodged in the city jail for two hours where his fingerprints were taken by the police. On the following day he was arraigned in a court whose clerk had known respondent from high school days. He later stood trial for two days before a jury, all of which humiliated him, to say nothing of the ignominy he suffered by having his wife appear and testify at the trial. The jury is not only the constitutional tribunal for the appraisal of the damages suffered by a litigant, but also by tradition and reason it is the universally acceptable body for determining the value of pain, anguish, mortification and chagrin, the value of loss of liberty and annoyance and of injury to reputation. Unless they be misled by incompetent evidence or by inflamed passion, their verdict as approved by

the trial court constitutes the findings and is a firm support for the judgment.

In *Collins* v. *Jones,* 131 Cal.App. 747 [22 P.2d 39], Collins was awarded $10,000 as damages for having been committed for a psycopathic examination on defendant's charge of insanity. In *Russell* v. *Dennison,* 45 Cal. 337, tried in 1873, the plaintiff was allowed $3,500 for being confined in jail five days. Decisions cited by appellants on the issue of a reduction of the amount of the award suggests no extreme variance from the judgment in the cases of Collins and Russell, *supra.* But in *Carroll* v. *Pacific Coast Auto Assn.,* 123 Cal.App. 568 [11 P.2d 660], $5,000 was awarded for being prosecuted on an embezzlement charge which was dismissed at the preliminary hearing. In *Diggs* v. *Arnold Bros.,* 132 Cal.App. 518 [23 P.2d 71], plaintiff was awarded $3,000 for having been accused of the theft of an automobile. In *Singleton* v. *Singleton,* 68 Cal.App.2d 681 [157 P.2d 886], $2,500 was allowed the plaintiff for a malicious charge of grand theft and 10 hours in jail and a dismissal at the preliminary examination.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied July 14, 1950, and appellants' petition for a hearing by the Supreme Court was denied August 24, 1950. Traynor, J., voted for a hearing.