[Civ. No. 7408. First Appellate District, Division One.—December 29, 1930.]

THOMAS M. O'DONNELL, Respondent, v. EXCELSIOR AMUSEMENT CO. (a Corporation) et al., Appellants.

L. S. Hamm, J. G. Moser and B. E. Kragen for Appellants.

Ford & Johnson for Respondent.

THE COURT.—The respondent, Thomas M. O'Donnell, entered a moving picture theater on Mission Street, near Ocean Avenue, in San Francisco, without purchasing a ticket, and as a result of the altercation which followed was severely injured by the special police officer of the theater, named Murphy. On account of the injuries respondent brought this action for damages against Murphy's employer, the appellant corporation, and upon trial before a jury was awarded a verdict of $7,500. Judgment was entered accordingly, and following the denial of a motion for a new trial this appeal was taken. The sole ground

urged for reversal is that the amount of the verdict is grossly excessive, it being contended that the cause should be remanded for a new trial upon the single issue of damages. (*Morris* v. *Standard Oil Co.,* 188 Cal. 468 [205 Pac. 1073].)

The injuries respondent received consisted chiefly of contusions about the face, several loosened teeth, two of which were afterward extracted, and a compound fracture of the jaw. About two weeks after the injuries were inflicted an abscess developed under the covering of the jawbone, causing much pain and necessitating an operation; and about three weeks later a second and similar operation was performed. The injuries required respondent to remain in the hospital for a period of forty-two days and kept him from work fifty-two days. Aside from the loss of the teeth, a slight impairment of the use of the jaws, and a small scar on the side of the face where the abscess was lanced, no permanent injuries were shown. Respondent stated also that his eyesight and hearing had not been as good since he was injured, but there was no medical testimony produced to prove that either had resulted from these injuries, and in this connection it was shown that he was forty-two years old at the time this trouble happened, and that continuously for fifteen years prior thereto he had been employed as a boilermaker in the shops of the Southern Pacific Company, in the southern part of the city; and with reference to his defective hearing he frankly admitted that all of the men engaged in that kind of work sooner or later are affected that way, and that ''it had been coming on him'' for four or five years. On account of his employment with the railroad company he was put to no expense whatever for the medical, surgical, and hospitalization treatment he received at the hospital. Consequently the pecuniary damage he sustained was confined to the loss of wages, amounting to $336.96, leaving an award of approximately $7,100 as damages for the other elements recoverable in this particular kind of a case.

As indicated, Murphy was not made a party to the action, his employer alone being sued; therefore compensatory damages only, to the exclusion of exemplary damages, were recoverable; and the jury was so instructed. The measure of compensatory damages in an action against

the master for an assault committed by the servant is much the same as in other actions for tortious injuries to the person, including, among other elements, recovery for the pecuniary loss, the physical injuries and the consequent pain and suffering, and medical and like expenses; and in addition thereto recovery may be had for wounded feelings, indignity and humiliation (5 Corpus Juris, p. 702; 2 Ruling Case Law, p. 580). In view of this latter element it becomes necessary to inquire to some extent at least into the circumstances leading up to the alleged assault. In this regard the evidence shows that on the evening in question respondent's daughter, aged fourteen years, was attending the theater as a spectator; and when respondent returned home from his work he went to the theater for the purpose, so he claims, of accompanying her home. The theater has two front entrance doors, and a doorman was stationed at one of them. Without purchasing a ticket, respondent entered the other door, and the doorman, named Geister, followed him in, and told him that he would have to buy a ticket or leave. Respondent testified that prior to the evening in question he had been given permission by the manager, named Moore, to enter the theater for the purpose of bringing his daughter home, and that he tried to explain the matter to Geister and asked to see Moore, but that Geister refused to listen and sent for Murphy; that when Murphy arrived, he, too, refused to listen to any explanation or to call Moore, and taking hold of him told him he "was going out"; that he brushed Murphy's hand aside and told him to keep his hands off; that thereupon Murphy took hold of him again and shoved him forward toward a room in the front of the theater, and while holding him with one hand gave the keys to an attendant with instructions to open the door. Respondent's testimony, in the foregoing respects, was substantially corroborated by another witness, who stated that on the way to the room Murphy struck respondent three times on the chin. Continuing, respondent testified that as soon as the door of the room was opened Murphy shoved him inside and immediately started to beat him about the face with some blunt instrument, inflicting the injuries above described, and knocking him to the floor in a dazed condition; that Moore then appeared and prevented further punishment; that soon afterward his daugh-

ter was allowed to come into the room and took him away; and later he went to the Southern Pacific Hospital for treatment.

Geister testified that as respondent entered the theater he asked him for his ticket and was told ''to go to hell''; that when he followed respondent down the aisle and told him he must either purchase a ticket or leave, respondent again told him ''to go to hell''; that thereupon he called Murphy and that respondent continued to scuffle until put into the room. Briefly stated, Murphy's testimony was that when respondent refused to buy a ticket or leave he started to eject him, but that respondent commenced to fight; that he then concluded that respondent should be sent to jail and accordingly took him to the room to await the arrival of the police patrol wagon; that on the way to the room respondent was fighting ''furiously'', and that consequently he ''gave him a punch''; that when they entered the room respondent continued to fight, and that he ''gave him a punch and pushed him around a bit and he fell over, and there was a chair there and desk, and he fell over it'', and that thereupon he, Murphy, shut the door. Murphy denied striking respondent with any instrument, and Moore, Geister and Murphy all testified that respondent was under the influence of liquor; but this was denied by respondent.

If the action were brought against Murphy, the one by whom the injuries were inflicted, and the jury were asked to add exemplary damages as a punishment for the assault, the evidence above set forth would be legally sufficient, beyond doubt, to sustain the amount of the award; but as pointed out, respondent has not chosen to sue the person who made the attack, but has sought to hold his employer responsible therefor, against whom exemplary damages are neither claimed nor recoverable. That being so, we are unable to escape the conclusion that the amount of the verdict is excessive beyond all reasonable limit, it being manifest, we think, that after making all reasonable allowance for the legitimate elements of damage, the jury lost sight of the fact that the person inflicting the injuries was not being sued, and despite the instructions of the court to the contrary awarded damages by way of punishment against his employer. In so holding we are not unmindful of the rule that the matter of excessive damages is one which

must be left almost entirely to the determination of the trial court, and that reviewing courts will not interfere unless the verdict is obviously so disproportionate to the injuries received as to justify the belief that it is not the result of cool and dispassionate discretion of the jury (*Szasz* v. *Joyland Co.*, 84 Cal. App. 259 [257 Pac. 871]), and to suggest at first blush, passion and prejudice or corruption on the part of the jury (*Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100]; *Morris* v. *Standard Oil Co.*, *supra*). But being convinced that in fixing the amount of damages in the present case the jury ignored certain well-defined legal rights to which appellant, as an employer, was clearly entitled, and that the excessive amount it allowed was the product of passion and prejudice, arising from the belief on the part of the jury that the chastisement administered to respondent was unnecessary and wanton, a plain case is presented, we think, where the exercise of the power reserved in the reviewing court is demanded.

The judgment is therefore reversed and the cause remanded for a new trial upon the single issue of damages.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 28, 1931, and the following opinion then rendered thereon:

THE COURT.— In his petition for rehearing respondent urges for the first time that he is entitled to punitive damages, and that consequently, even though the jury went beyond the limits of the rule of compensatory damages and included in its verdict an allowance to him of punitive damages, the verdict should be allowed to stand. The contention is based upon certain evidence adduced at the trial. It may be conceded that under some circumstances, where the act complained of was done with the authority, either express or implied, of the employer, or was subsequently adopted by him, he may be held liable for punitive damages. But, as pointed out in the main opinion, respondent in his complaint did not claim punitive damages, nor did he allege any facts or circumstances which would have warranted the trial court in submitting such an issue to the jury. Furthermore, throughout the trial of the action no such damages were claimed, and the court instructed the

jury that "this is not a case for punitive or exemplary damages . . . " It is evident, therefore, that the position respondent now assumes is not only at complete variance with the one taken by him throughout the trial of the action and on the appeal from the judgment, but the effect thereof is to ask this court to approve an award of damages having no foundation whatever in the allegations or prayer of the complaint, and which the trial court expressly instructed the jury respondent was not entitled to. Obviously, in the state of the record above described, and aside from any question of whether the evidence relied upon is even sufficient to support an award for punitive damages, respondent's contention that he is entitled to the same cannot be entertained. Furthermore, counsel for respondent are doubtless mistaken in their assertion that "the beating administered to (respondent) occurred while the show was in progress in the theater and in the presence of numerous patrons, among them being his own daughter. . . . " According to respondent's own testimony the assault for which he seeks redress took place after Murphy shoved him into the room and closed the door, at which time no one else was present.

The petition for rehearing is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1931.