[Civ. No. 4649. Fourth Dist. Feb. 16, 1955.]

HOWARD HALL, Respondent, v. AL BERKELL et al.,
Appellants.

Lawrence L. Light for Appellants.

Dorris, Fleharty, Phillips & Underhill and Thomas H.
Underhill for Respondent.

GRIFFIN, J.—Plaintiff and respondent brought this action
against defendants and appellants for damages alleged to have
been caused by defendants' kicking and striking plaintiff
about the face and head in the Silver Dollar Café and Bar,
at Mojave. The prayer of the complaint was for special dam-
ages in the sum of $1,000 and general damages in the sum of
$10,000. A jury trial resulted in a general verdict for $5,000
against both defendants. The questions presented are the
sufficiency of the evidence to support the verdict, and claimed
error of the court in refusing and giving certain instructions.

Upon entering the café there was a bar to one's right or
south side of the room and a shuffleboard was across from it
on the north side. The café was in the rear. Plaintiff had
gone to Mojave to assist with livestock and help celebrate the
"Gold Rush Days," an annual event. He did considerable
drinking at the several bars during this time. On October

17, 1949, he entered this café about 7 p. m. and remained there for some time playing shuffleboard and having several straight whiskey drinks served him. Defendant Berkell and his brother owned stock in the corporation which was the owner of the café and bar. Defendant Berkell owned 30 per cent of it and was managing the café that evening. Defendant Davis was employed as a bartender.

The constable was seated on a stool at the bar with others, and according to defendants' testimony, defendants refused to serve plaintiff more liquor because of his intoxication. Apparently, plaintiff purchased a drink for the constable and later took it from the constable and drank it himself. Plaintiff claims he paid for that drink. Apparently Berkell saw what he was doing, went around by the plaintiff, and according to Berkell's testimony, put his arm around him and begged plaintiff to leave the premises because of his condition. He testified that plaintiff, unexpectedly, "backhanded" him and knocked him across the room against the shuffleboard; that plaintiff grabbed a beer bottle from the bar and started to strike at Davis, the bartender, who was climbing on the bar from inside; that Davis struck the plaintiff near the jaw by kicking him with his shoe, and plaintiff fell to the concrete floor and became unconscious; that an ambulance was called and plaintiff was taken to a local hospital.

Plaintiff's version is a little different. He claims that Berkell came around the bar and grabbed him by the shoulder, spun him around and chastised him for drinking customer's drinks and said: "Don't be drinking the customers' drinks . . . We don't allow mooching in here"; that he started to jerk plaintiff away from the bar and had his hand folded as if he was going to strike plaintiff with it; that he (plaintiff) "backhanded" Berkell and he (plaintiff) turned to the bar, Davis jumped upon it and kicked the side of plaintiff's head and he fell backwards on the cement floor, striking the back of his head. There was a conflict in the evidence as to whether plaintiff had a beer bottle in his hand when the bartender kicked him. There is considerable corroboration of Berkell's testimony.

Plaintiff was examined at the hospital by a doctor who found no fracture of the head but he did not "rule out" the possibility of such a fracture. He indicated that there was evidence of a certain amount of concussion but that it was difficult to determine whether plaintiff's actions were due to liquor or concussion. After 30 minutes of examination plain-

tiff insisted on being taken to his sister's car where he spent the rest of the night. He complained of severe headaches and severe bleeding of the nose and mouth. In the morning he went into a friend's home and remained there that day. About dark, he went to another bar and café where he had more drinks and met a Mrs. Brauch, who took him to her home. On their arrival there Mrs. Brauch's husband objected to plaintiff's presence and started an argument with his wife. Plaintiff interfered and "back handed" the husband, who had been drinking considerably, and knocked him to the ground. A few days later plaintiff went to the county hospital in Bakersfield where he remained about six days and was then discharged. He continued to complain of his headaches and was taken to the veterans' hospital in Van Nuys. An operation was performed on his head and he was relieved of the pressure. After some time he gained his former health.

It was stipulated at the trial that defendant Davis was then in the armed services in Washington, D. C. and was not available as a witness. A continuance was sought on the day of trial, May 26th, 1952, for the purpose of obtaining his testimony, which motion was denied. His answer was filed on January 11, 1950, and apparently no error is claimed in the briefs on appeal pertaining to the action of the trial court in denying the motion.

The first issue raised is the claim that there was no agency or relationship of master and servant established as between defendant Berkell and defendant Davis; that since plaintiff's complaint alleged that Berkell was the owner and operator of the saloon and Davis was the agent, servant and employee of defendant Berkell, and since defendants denied these allegations, the burden was upon plaintiff to prove them; that since the case was tried upon this theory, and since the evidence was uncontradicted that Davis was an employee of the corporation and not of Berkell, individually, plaintiff may not recover against Berkell, individually, citing such cases as *Billig* v. *Southern Pac. Co.*, 189 Cal. 477 [209 P. 241]; *Day* v. *Western Loan & Bldg. Co.*, 42 Cal.App.2d 226 [108 P.2d 702]; and 16 California Jurisprudence, page 1110, section 67.

Plaintiff now contends on appeal that Berkell was the principal instigator of the vicious assault that was made on him by defendant Davis and that Berkell aided, abetted, and participated in it and that all persons participating in an assault and battery are jointly and severally liable for the

entire damage sustained without regard to the degree of culpability or extent of their participation in the attack, citing such cases as *More* v. *Finger,* 128 Cal. 313, 319 [60 P. 933]; *Loeb* v. *Kimmerle,* 215 Cal. 143, 150 [9 Cal.2d 199]; 6 C.J.S. 831; *Nevin* v. *Gary,* 12 Cal.App. 1 [106 P. 422]; and *Revert* v. *Hesse,* 184 Cal. 295 [193 P. 943].

In *Loeb* v. *Kimmerle, supra,* it was held that where the jury might reasonably believe from the evidence that the parties united or cooperated in doing a wrong, where one defendant was the mental participant and the other defendant the physical participant, and they were acting in concert and each knew the intent and purpose of the other, they may be jointly liable. A close questions arises from the evidence presented whether plaintiff has brought defendant Berkell within this rule. Since the judgment must be reversed on other grounds, we will not make a determination of this question.

Although not directly argued in the briefs, the general question of erroneous instructions of law given by the trial court was raised on the motion for new trial, and is indirectly raised on appeal. It appears that two instructions on the question of exemplary or punitive damages were given. An examination of the pleadings clearly shows that plaintiff, in his complaint, did not allege facts showing that he was seeking or was entitled to exemplary damages. There is no prayer for such damages. The complaint contains no allegations of oppression, fraud, or malice on the part of defendants. (Civ. Code, § 3294.) The complaint merely states that defendant Davis was the bartender and as such was the agent, servant, and/or employee of the defendant Berkell; that about October 17, 1949, defendants suddenly, without warning, struck and kicked the plaintiff about the head and face and did seriously beat, wound and injure him with their hands and feet; that as a direct and proximate result of said beating plaintiff sustained severe injuries consisting of a fractured skull, etc., "all of which caused plaintiff severe pain and suffering, to his damage in the sum of" $10,000; that as a direct and proximate result of the injuries sustained by plaintiff, as aforesaid, he was obliged to incur doctor bills, etc., in the sum of $1,000. The total prayer is for the sum of $11,000.

When defendants filed their joint answer, plaintiff's claim of exemplary damages was not indicated. It is problematical upon what theory the case was actually tried, but there is nothing in the evidence or pleadings that indicates that plain-

tiff was making any such claim. So far as the record is concerned, the first indication of such a claim was when plaintiff offered and the court gave an instruction to the jury to the effect that "in addition to any actual damages . . . you may award exemplary damages . . . in case you should find that the wrongful acts, if any, by the defendant causing such actual damages were committed in wanton, willful, or reckless manner, . . . were from any bad motive" etc. or when it is shown that the attack upon plaintiff was "wanton or malicious" and "without any provocation"; and that in fixing such damages the jury "may consider the pecuniary means of the defendants."

A motion for new trial on the grounds of misdirection of the jury as to the law and on the ground of insufficiency of the evidence was denied.

It appears to us, from the evidence produced and from the instructions, as given, that the jury did attempt to include in the general award, damages by way of punishment or at least it was as likely as not that punitive damages were awarded. The giving of such unauthorized instructions was erroneous. The same question was presented in *Lorenz* v. *Hunt*, 89 Cal.App. 6 [264 P. 336]. There, plaintiff brought an action for general damages as a result of an assault and battery and did not plead nor pray for exemplary damages. The court found plaintiff was entitled to $1,500 general damages and $1,000 exemplary damages. On appeal from the judgment the appellate court said, at page 15:

"The complaint contains no allegation of oppression, fraud or malice on the part of defendant nor any demand for exemplary damages. There is no basis, therefore, for the award of punitive damages. (8 Cal.Jur. 894.) It is true that there is sufficient evidence to show malice and the court found that the defendant's assault upon the plaintiff and her arrest by him were malicious and oppressive, but it cannot be held that the case was tried upon the theory that the question of punitive damages was in issue, because the evidence tending to show malice and oppression was admissible in support of the allegation of actual damages. 'It is frequently the case that evidence which is admissible to establish one issue may tend to establish another issue than that for which it is offered, and it is a rule that evidence so introduced is available to establish any of the issues in the case. This rule is, however, limited to the issues which are to be tried. If the other issue that the evidence may tend to establish is not before the

court the evidence must be limited to the actual issue. The fact of its introduction cannot be used to establish an issue that the parties have not made in their pleading. The court would not be authorized to consider it as establishing an issue that was not before it for trial. Even a finding upon such evidence would be disregarded in determining the correctness of the judgment.' ''

To the same effect is *O'Donnell* v. *Excelsior Amusement Co.,* 110 Cal.App. 685 [294 P. 737, 295 P. 86]; *Belm* v. *Patrick,* 109 Cal.App. 599 [293 P. 847]; and *Gudarov* v. *Hadjieff,* 38 Cal.2d 412, 416-417 [240 P. 621], where it is said:

'' 'The basic differences between compensatory and punitive damages refute the contention that defendant was given notice that punitive damages were sought by the complaint. The two differ in nature and purpose. One is given as compensation; the other purely as punishment and by way of example. (Civ. Code, § 3294.) A demand or prayer for one is not a demand legally, or otherwise, for the other, or for both. The court is without authority to grant relief of a kind essentially different from that which a defaulting defendant would reasonably anticipate from a reading of the complaint. Plaintiff contends correctly that the term ''damages'' embraces both compensatory and punitive damages but this argument does not reach the problem. The allegation of the complaint which immediately precedes the prayer for relief states that plaintiff has been damaged in the sum of $100,000. This can mean only compensatory damages. We think a skilled or an unskilled reader would understand the prayer for compensation in this amount to be a demand for compensatory relief and nothing more.

'' 'The fact that the damages awarded were less than those claimed is not an answer to defendant's contention that plaintiff sought only compensatory damages and was awarded in addition to that relief damages by way of punishment.' ''

(See also *Avakian* v. *Noble,* 121 Cal. 216 [53 P. 559]; *Lamb* v. *Harbaugh,* 105 Cal. 680 [39 P. 56]; *Foley* v. *Martin,* 142 Cal. 256, 264 [71 P. 165, 75 P. 842, 100 Am.St.Rep. 123]; 8 Cal.Jur. 892, § 129.)

A new trial should be had under proper pleadings with the issues clarified, and under proper instructions.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.